# EXHIBIT TO DECEMBER 10, 2007 DECLARATION OF PHILIP R. HOFFMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

## PHAT FASHIONS LLC V. TORNADO IMPORTS (CANADA), INC.
### Case No.: 07 Civ. 3278 (PAC)

# EXHIBIT 12



"Nathanson, Eli B."
&lt;ENathanson@PRYORCAS
HMAN.com&gt;

03/20/2006 03:19 PM

To &lt;Bernt_Ullmann@kellwood.com&gt;

cc "Rose, Brad D." &lt;BRose@PRYORCASHMAN.com&gt;,
&lt;Don.Gramke@Kellwood.com&gt;, "Peter Morris"
&lt;Peter.Morris@kellwood.com&gt;,

bcc

Subject Phat Fashions/Tornado/Draft Amendment No. 1

Bernt - attached hereto please find the draft amendment no 1 to the license agreement with Tornado. Coupe of notes:

-I backed the numbers out from the GMR figures we were given to come up with GMNS based on the 7% royalty rate.

-their current agreement allows them to 'buy up' by paying 100% GMR so long as they hit at least 75% of the GMNS. I did not amend this at this time. Please advise if you would like me to amend this to our current standard language.

-although my understanding is that Tornado does not manufacture anything, they do have the right under the agreement so to the extent they ever do, I added the new provision regarding sales to us for our stores.

Please let me know if you would like me to send on to Issie directly and I will be happy to do so. Thanks. Eli

&lt;&lt;DOCS-#463107-v1-Phat_Fashions_Tornado_Imports_-_Amendment_No__1.DOC&gt;&gt;

Eli B. Nathanson
Pryor Cashman Sherman & Flynn LLP
410 Park Avenue, 10<sup>th</sup> Floor
New York, NY 10022
212-326-0894
212-326-0806 (facsimile)
enathanson@pryorcashman.com

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply email @pryorcashman.com, and delete the message. Thank you very much.

To ensure compliance with U.S. Treasury Department regulations, we advise that, unless otherwise expressly indicated, any


PLAINTIFF'S
EXHIBIT
12

PF 0927

discussion of Federal tax issues in this communication was not intended or written to be used, and cannot be used (i) to avoid any penalties imposed under the Internal Revenue Code or applicable provisions of state or local tax law or (ii) to promote, market or recommend to another party any transaction or matter addressed herein.



DOCS-#463107-v1-Phat_Fashions_Tornado_Imports_-_Amendment_No__1.DOC

PF 0928

# AMENDMENT NO. 1

## TO

## TRADEMARK LICENSE AGREEMENT

**AMENDMENT NO. 1**, effective as of March __, 2006 (this "Amendment") to Trademark License Agreement, between Phat Fashions LLC, a New York limited liability company with offices at 512 Seventh Avenue, 43rd Floor, New York, NY 10018 ("Licensor"), and Tornado Imports (Canada), Inc., a company organized under the laws of Canada, with offices at 5540 Rue Ferrier, Montreal, P.Q. Canada H4P 1M2 ("Licensee").

**WHEREAS**, Licensor and Licensee are parties to that certain Trademark License Agreement, dated as of August 1, 1998 (the "License Agreement"). Capitalized terms used and not defined herein shall have the respective meanings assigned to them in the License Agreement; and

**WHEREAS**, the parties desire to amend the License Agreement to provide for, among other things, additional Renewal Terms, as hereinafter set forth;

**NOW, THEREFORE**, in consideration of the premises and mutual agreements herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    The License Agreement is hereby amended by adding the following new Section 3(d):

"3(d) Provided Licensee shall have exercised the Second Option, and provided that Licensee shall not be in default with respect to any of its obligations hereunder and provided further that Licensee shall have both paid one hundred percent (100%) of the GMR and achieved Net Sales during each Annual Period of the Second Option Term of no less than seventy five percent (75%) percent of the Minimum Net Sales for such Annual Period, Licensee shall be given an option (the "Third Option") to extend the Term of this Agreement for three (3) additional years to commence January 1, 2008, and to end December 31, 2010 (the "Third Option Term"), which Third Option must be exercised in writing in the same manner as notices hereunder and received by Licensor no earlier than March 1, 2007, and no later than June 30, 2007, time being of the essence."

2.    The License Agreement is hereby amended by adding the following new Section 3(e):

"3(e) Provided Licensee shall have exercised the Third Option, and provided that Licensee shall not be in default with respect to any of its obligations hereunder and provided further that Licensee shall have both paid one hundred percent (100%) of the GMR and achieved Net Sales during each Annual Period of the Third Option Term of no less than seventy five percent (75%) percent of the Minimum Net Sales, Licensee shall be given an option (the "Fourth Option") to extend the Term of this Agreement for three (3) additional years to commence January 1, 2011, and to end December 31, 2013 (the "Fourth Option Term"), which Fourth

463107

PF 0929

Option must be exercised in writing in the same manner as notices hereunder and received by Licensor no earlier than March 1, 2010, and no later than June 30, 2010, time being of the essence."

3.     Section 4(f) of the License Agreement is hereby amended by adding the following Minimum Net Sales and GMR figures for the Third Option Period and the Fourth Option Period, as follows:

| "Annual Periods During Term | | | Minimum Net Sales | | GMR | |
|---|---|---|---|---|---|---|
| **Third Option Period** | | | | | | |
| January 1, 2008 | - | December 31, 2008 | $ | 5,000,000 | $ | 350,000 |
| January 1, 2009 | - | December 31, 2009 | | 6,430,000 | | 450,000 |
| January 1, 2010 | - | December 31, 2010 | | 7,858,000 | | 550,000 |
| **Fourth Option Period** | | | | | | |
| January 1, 2011 | - | December 31, 2011 | | 8,580,000 | | 600,000 |
| January 1, 2012 | - | December 31, 2012 | | 9,286,000 | | 650,000 |
| January 1, 2013 | - | December 31, 2013 | | 10,000,000 | | 700,000" |

4.     The License Agreement is hereby amended by deleting Section 6(d) in its entirety and replacing it with the following:

"6(d)  Licensee shall have the exclusive right to establish prices and terms for the sale of Licensed Products. Licensee shall provide Licensor, in advance of each selling season, with line sheets and price lists, and Licensee shall promptly notify Licensor of any change in pricing. Licensee agrees to sell to Licensor such quantities of Licensed Products, from time to time, as requested by Licensor for promotional purposes and for sale in stores and websites operated by Licensor or its Affiliates, licensees and/or subcontractors for prices equal to the lesser of thirty percent (30%) percent below Licensee's normal wholesale selling prices at the time of any such sale, or the lowest price charged by Licensee to any of its customers.  Such sales shall constitute Net Sales for purposes of computing Minimum Net Sales but a reduced Royalty of five and one half percent (5.5%) of such sales price shall be payable to Licensor and no Advertising Payment shall be due thereon."

5.     The License Agreement is hereby amended by deleting the Licensor notice information in Section 14 and replacing it with the following:

If to Licensor:

Phat Fashions LLC
512 Seventh Avenue, 43rd Floor
New York, NY 10018
Attention:    Mr. Bernt Ullmann

463107

with a copy to:

> Pryor Cashman Sherman & Flynn LLP
> 410 Park Avenue, 10th Floor
> New York, New York 10022
> Attention:    Brad D. Rose, Esq.
>
> and
>
> Kellwood Company
> 600 Kellwood Parkway
> Chesterfield, MO 63017
> Attention:  Corporate Secretary/Legal Department"

6.    Except as modified by this Amendment, all terms and conditions of the License Agreement shall remain in full force and effect.

7.    This Amendment may be signed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Facsimile copies of counterpart signature pages shall be deemed original counterpart pages for all purposes hereunder

8.    This Amendment shall be governed by and construed in accordance with, the law of the State of New York applicable to contracts made and to be performed in the State of New York, without regard to conflicts of law principles.

9.    In the event one or more of the provisions of this Amendment should, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions of this Amendment, and this Amendment shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

[signature appears on next page]

463107

**IN WITNESS WHEREOF,** this Amendment has been executed and delivered by the parties hereto as of the date first above written.

PHAT FASHIONS, LLC

By:_____
     Name:
     Title:

By:_____
     Name:
     Title:

Tornado Imports (Canada), Inc.

By:_____
     Name:
     Title:

DRAFT

463107

PF 0932

# EXHIBIT TO DECEMBER 10, 2007 DECLARATION OF PHILIP R. HOFFMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

## <u>PHAT FASHIONS LLC V. TORNADO IMPORTS (CANADA), INC.</u>
### Case No.:  07 Civ. 3278 (PAC)

# EXHIBIT 13

## Hoffman, Philip R.

**From:**      Bernt.Ullmann@kellwood.com
**Sent:**      Monday, March 20, 2006 7:43 PM
**To:**        Nathanson, Eli B.
**Cc:**        Rose, Brad D.; Don.Gramke@Kellwood.com; Peter.Morris@kellwood.com;
               Jan.Wooton@kellwood.com
**Subject:** Re: Phat Fashions/Tornado - Draft Amendment No. 1

```
Eli,

Pls send to Issie directly with the standard disclaimer that the contract has yet
to be reviewed by your client.

Thx,

Bernt
---------------------------
Sent from my BlackBerry Wireless Handheld
```

```
----- Original Message -----
From: "Nathanson, Eli B." [ENathanson@PRYORCASHMAN.com]
Sent: 03/20/2006 03:19 PM
To: Bernt Ullmann
Cc: Rose, Brad D." <BRose@PRYORCASHMAN.com>
Subject: Phat Fashions/Tornado - Draft Amendment No. 1
```

Bernt - attached hereto please find the draft amendment no 1 to the license agreement with Tornado. Coupe of notes:

    -I backed the numbers out from the GMR figures we were given to come up with GMNS based on the 7% royalty rate.

    -their current agreement allows them to 'buy up' by paying 100% GMR so long as they hit at least 75% of the GMNS. I did not amend this at this time. Please advise if you would like me to amend this to our current standard language.

    -although my understanding is that Tornado does not manufacture anything, they do have the right under the agreement so to the extent they ever do, I added the new provision regarding sales to us for our stores.

    Please let me know if you would like me to send on to Issie directly and I will be happy to do so. Thanks. Eli

<<DOCS-#463107-v1-Phat_Fashions_Tornado_Imports_-_Amendment_No__1.DOC>>

Eli B. Nathanson
Pryor Cashman Sherman & Flynn LLP
410 Park Avenue, 10th Floor
New York, NY 10022
212-326-0894

10/3/2007

PLAINTIFF'S
EXHIBIT
3

PF 0133

Phat Fashions/Tornado - Draft Amendment No. 1                                   Page 2 of 2

212-326-0806 (facsimile)
enathanson@pryorcashman.com

This message contains information which may be confidential
and privileged. Unless you are the addressee (or authorized
to receive for the addressee), you may not use, copy or
disclose to anyone the message or any information contained
in the message. If you have received the message in error,
please advise the sender by reply email @pryorcashman.com,
and delete the message. Thank you very much.

To ensure compliance with U.S. Treasury Department regulations,
we advise that, unless otherwise expressly indicated, any
discussion of Federal tax issues in this communication was not
intended or written to be used, and cannot be used (i) to avoid
any penalties imposed under the Internal Revenue Code or
applicable provisions of state or local tax law or (ii) to
promote, market or recommend to another party any transaction
or matter addressed herein.

10/3/2007

PF 0134

# EXHIBIT TO DECEMBER 10, 2007 DECLARATION OF PHILIP R. HOFFMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

## <u>PHAT FASHIONS LLC V. TORNADO IMPORTS (CANADA), INC.</u>
### Case No.:  07 Civ. 3278 (PAC)

# EXHIBIT 14

| From: | Nathanson, Eli B. [ENathanson@PRYORCASHMAN.com] |
|---|---|
| Sent: | Monday, March 20, 2006 8:27 PM |
| To: | iwiseman@tyfoon.com |
| Cc: | Rose, Brad D.; Don.Gramke@Kellwood.com; Bernt_Ullmann@kellwood.com; Peter Morris; jan_wooton@kellwood.com |
| Subject: | Phat Fashions/Tornado Imports – Draft Amendment to License Agreement |
| Attachments: | DOCS-#463107-v1-Phat_Fashions_Tornado_Imports_-_Amendment_No__1.DOC |

Issie - at the request of Bernt Ullmann, I am attaching for your review a draft Amendment No. 1 to the License Agreement among the above referenced parties.

I am simultaneously transmitting the attached to our client and must therefore reserve the right to modify same as directed.

Please contact us to discuss any comments you have.  Best regards.

<<DOCS-#463107-v1-Phat_Fashions_Tornado_Imports_-_Amendment_No__1.DOC>>

Eli B. Nathanson
Pryor Cashman Sherman & Flynn LLP
410 Park Avenue, 10th Floor
New York, NY 10022
212-326-0894
212-326-0806 (facsimile)
enathanson@pryorcashman.com

---

This message contains information which may be confidential
and privileged. Unless you are the addressee (or authorized
to receive for the addressee), you may not use, copy or
disclose to anyone the message or any information contained
in the message. If you have received the message in error,
please advise the sender by reply email @pryorcashman.com,
and delete the message. Thank you very much.

---

To ensure compliance with U.S. Treasury Department regulations,
we advise that, unless otherwise expressly indicated, any
discussion of Federal tax issues in this communication was not
intended or written to be used, and cannot be used (i) to avoid
any penalties imposed under the Internal Revenue Code or
applicable provisions of state or local tax law or (ii) to
promote, market or recommend to another party any transaction
or matter addressed herein.

---

10/23/2007


PLAINTIFF'S
EXHIBIT
14

TOR 000107

# AMENDMENT NO. 1

# TO

# TRADEMARK LICENSE AGREEMENT

**AMENDMENT NO. 1**, effective as of March __, 2006 (this "Amendment") to Trademark License Agreement, between Phat Fashions LLC, a New York limited liability company with offices at 512 Seventh Avenue, 43rd Floor, New York, NY 10018 ("Licensor"), and Tornado Imports (Canada), Inc., a company organized under the laws of Canada, with offices at 5540 Rue Ferrier, Montreal, P.Q. Canada H4P 1M2 ("Licensee").

**WHEREAS,** Licensor and Licensee are parties to that certain Trademark License Agreement, dated as of August 1, 1998 (the "License Agreement"). Capitalized terms used and not defined herein shall have the respective meanings assigned to them in the License Agreement; and

**WHEREAS,** the parties desire to amend the License Agreement to provide for, among other things, additional Renewal Terms, as hereinafter set forth.

**NOW, THEREFORE,** in consideration of the premises and mutual agreements herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      The License Agreement is hereby amended by adding the following new Section 3(d):

"3(d) Provided Licensee shall have exercised the Second Option, and provided that Licensee shall not be in default with respect to any of its obligations hereunder and provided further that Licensee shall have both paid one hundred percent (100%) of the GMR and achieved Net Sales during each Annual Period of the Second Option Term of no less than seventy five percent (75%) percent of the Minimum Net Sales for such Annual Period, Licensee shall be given an option (the "Third Option") to extend the Term of this Agreement for three (3) additional years to commence January 1, 2008, and to end December 31, 2010 (the "Third Option Term"), which Third Option must be exercised in writing in the same manner as notices hereunder and received by Licensor no earlier than March 1, 2007, and no later than June 30, 2007, time being of the essence."

2.      The License Agreement is hereby amended by adding the following new Section 3(e):

"3(e) Provided Licensee shall have exercised the Third Option, and provided that Licensee shall not be in default with respect to any of its obligations hereunder and provided further that Licensee shall have both paid one hundred percent (100%) of the GMR and achieved Net Sales during each Annual Period of the Third Option Term of no less than seventy five percent (75%) percent of the Minimum Net Sales, Licensee shall be given an option (the "Fourth Option") to extend the Term of this Agreement for three (3) additional years to commence January 1, 2011, and to end December 31, 2013 (the "Fourth Option Term"), which Fourth

463107

Option must be exercised in writing in the same manner as notices hereunder and received by Licensor no earlier than March 1, 2010, and no later than June 30, 2010, time being of the essence."

3.      Section 4(f) of the License Agreement is hereby amended by adding the following Minimum Net Sales and GMR figures for the Third Option Period and the Fourth Option Period, as follows:

| "Annual Periods During Term | | | Minimum Net Sales | GMR |
|---|---|---|---|---|
| **Third Option Period** | | | | |
| January 1, 2008 | – | December 31, 2008 | $    5,000,000 | $     350,000 |
| January 1, 2009 | – | December 31, 2009 | 6,430,000 | 450,000 |
| January 1, 2010 | – | December 31, 2010 | 7,858,000 | 550,000 |
| **Fourth Option Period** | | | | |
| January 1, 2011 | – | December 31, 2011 | 8,580,000 | 600,000 |
| January 1, 2012 | – | December 31, 2012 | 9,286,000 | 650,000 |
| January 1, 2013 | – | December 31, 2013 | 10,000,000 | 700,000" |

4.      The License Agreement is hereby amended by deleting Section 6(d) in its entirety and replacing it with the following:

"6(d)  Licensee shall have the exclusive right to establish prices and terms for the sale of Licensed Products. Licensee shall provide Licensor, in advance of each selling season, with line sheets and price lists, and Licensee shall promptly notify Licensor of any change in pricing. Licensee agrees to sell to Licensor such quantities of Licensed Products, from time to time, as requested by Licensor for promotional purposes and for sale in stores and websites operated by Licensor or its Affiliates, licensees and/or subcontractors for prices equal to the lesser of thirty percent (30%) percent below Licensee's normal wholesale selling prices at the time of any such sale, or the lowest price charged by Licensee to any of its customers.   Such sales shall constitute Net Sales for purposes of computing Minimum Net Sales but a reduced Royalty of five and one half percent (5.5%) of such sales price shall be payable to Licensor and no Advertising Payment shall be due thereon."

5.      The License Agreement is hereby amended by deleting the Licensor notice information in Section 14 and replacing it with the following:

If to Licensor:

Phat Fashions LLC
512 Seventh Avenue, 43rd Floor
New York, NY 10018
Attention:     Mr. Bernt Ullmann

463107

with a copy to:

      Pryor Cashman Sherman & Flynn LLP
      410 Park Avenue, 10th Floor
      New York, New York 10022
      Attention:     Brad D. Rose, Esq.

      and

      Kellwood Company
      600 Kellwood Parkway
      Chesterfield, MO 63017
      Attention:  Corporate Secretary/Legal Department"

6.     Except as modified by this Amendment, all terms and conditions of the License Agreement shall remain in full force and effect.

7.     This Amendment may be signed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Facsimile copies of counterpart signature pages shall be deemed original counterpart pages for all purposes hereunder

8.     This Amendment shall be governed by, and construed in accordance with, the law of the State of New York applicable to contracts made and to be performed in the State of New York, without regard to conflicts of law principles.

9.     In the event one or more of the provisions of this Amendment should, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions of this Amendment, and this Amendment shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

[signature appears on next page]

463107

**IN WITNESS WHEREOF,** this Amendment has been executed and delivered by the parties hereto as of the date first above written.

PHAT FASHIONS, LLC

By:_____
   Name:
   Title:


By:_____
   Name:
   Title:


Tornado Imports (Canada), Inc.


By:_____
   Name:
   Title:

463107

TOR 000111

# EXHIBIT TO DECEMBER 10, 2007 DECLARATION OF PHILIP R. HOFFMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

## PHAT FASHIONS LLC V. TORNADO IMPORTS (CANADA), INC.
### Case No.:  07 Civ. 3278 (PAC)

# EXHIBIT 15

| | |
|---|---|
| **From:** | Issie Wiseman [iwiseman@tyfoon.com] |
| **Sent:** | Friday, March 24, 2006 1:46 PM |
| **To:** | barry segal |
| **Subject:** | Fw: Phat Fashions/Tornado Imports - Draft Amendment to License Agreement |
| **Attachments:** | DOCS-#463107-v1-Phat_Fashions_Tornado_Imports_-_Amendment_No__1.DOC |

—— Original Message ——
**From:** Nathanson, Eli B.
**To:** iwiseman@tyfoon.com
**Cc:** Rose, Brad D. ; Don.Gramke@Kellwood.com ; Bernt_Ullmann@kellwood.com ; Peter Morris ;
jan_wooton@kellwood.com
**Sent:** Monday, March 20, 2006 7:26 PM
**Subject:** Phat Fashions/Tornado Imports - Draft Amendment to License Agreement

Issie - at the request of Bernt Ullmann, I am attaching for your review a draft Amendment No. 1 to the License
Agreement among the above referenced parties.

I am simultaneously transmitting the attached to our client and must therefore reserve the right to modify same as
directed.

Please contact us to discuss any comments you have.  Best regards.

<<DOCS-#463107-v1-Phat_Fashions_Tornado_Imports_-_Amendment_No__1.DOC>>

Eli B. Nathanson
Pryor Cashman Sherman & Flynn LLP
410 Park Avenue, 10th Floor
New York, NY 10022
212-326-0894
212-326-0806 (facsimile)
enathanson@pryorcashman.com

This message contains information which may be confidential
and privileged. Unless you are the addressee (or authorized
to receive for the addressee), you may not use, copy or
disclose to anyone the message or any information contained
in the message. If you have received the message in error,
please advise the sender by reply email @pryorcashman.com,
and delete the message. Thank you very much.

To ensure compliance with U.S. Treasury Department regulations,
we advise that, unless otherwise expressly indicated, any
discussion of Federal tax issues in this communication was not
intended or written to be used, and cannot be used (i) to avoid
any penalties imposed under the Internal Revenue Code or
applicable provisions of state or local tax law or (ii) to

10/24/2007



PLAINTIFF'S
EXHIBIT
15

promote, market or recommend to another party any transaction
or matter addressed herein.

10/24/2007

TOR 000527

# AMENDMENT NO. 1

# TO

# TRADEMARK LICENSE AGREEMENT

**AMENDMENT NO.** 1, effective as of March __, 2006 (this "Amendment") to Trademark License Agreement, between Phat Fashions LLC, a New York limited liability company with offices at 512 Seventh Avenue, 43rd Floor, New York, NY 10018 ("Licensor"), and Tornado Imports (Canada), Inc., a company organized under the laws of Canada, with offices at 5540 Rue Ferrier, Montreal, P.Q. Canada H4P 1M2 ("Licensee").

**WHEREAS,** Licensor and Licensee are parties to that certain Trademark License Agreement, dated as of August 1, 1998 (the "License Agreement"). Capitalized terms used and not defined herein shall have the respective meanings assigned to them in the License Agreement; and

**WHEREAS,** the parties desire to amend the License Agreement to provide for, among other things, additional Renewal Terms, as hereinafter set forth.

**NOW, THEREFORE,** in consideration of the premises and mutual agreements herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      The License Agreement is hereby amended by adding the following new Section 3(d):

"3(d) Provided Licensee shall have exercised the Second Option, and provided that Licensee shall not be in default with respect to any of its obligations hereunder and provided further that Licensee shall have both paid one hundred percent (100%) of the GMR and achieved Net Sales during each Annual Period of the Second Option Term of no less than seventy five percent (75%) percent of the Minimum Net Sales for such Annual Period, Licensee shall be given an option (the "Third Option") to extend the Term of this Agreement for three (3) additional years to commence January 1, 2008, and to end December 31, 2010 (the "Third Option Term"), which Third Option must be exercised in writing in the same manner as notices hereunder and received by Licensor no earlier than March 1, 2007, and no later than June 30, 2007, time being of the essence."

2.      The License Agreement is hereby amended by adding the following new Section 3(e):

"3(e) Provided Licensee shall have exercised the Third Option, and provided that Licensee shall not be in default with respect to any of its obligations hereunder and provided further that Licensee shall have both paid one hundred percent (100%) of the GMR and achieved Net Sales during each Annual Period of the Third Option Term of no less than seventy five percent (75%) percent of the Minimum Net Sales, Licensee shall be given an option (the "Fourth Option") to extend the Term of this Agreement for three (3) additional years to commence January 1, 2011, and to end December 31, 2013 (the "Fourth Option Term"), which Fourth

TOR 000528

Option must be exercised in writing in the same manner as notices hereunder and received by Licensor no earlier than March 1, 2010, and no later than June 30, 2010, time being of the essence."

3.    Section 4(f) of the License Agreement is hereby amended by adding the following Minimum Net Sales and GMR figures for the Third Option Period and the Fourth Option Period, as follows:

| "Annual Periods During Term | | | Minimum Net Sales | GMR |
|---|---|---|---|---|
| **Third Option Period** | | | | |
| January 1, 2008 | - | December 31, 2008 | $  5,000,000 | $    350,000 |
| January 1, 2009 | - | December 31, 2009 | 6,430,000 | 450,000 |
| January 1, 2010 | - | December 31, 2010 | 7,858,000 | 550,000 |
| **Fourth Option Period** | | | | |
| January 1, 2011 | - | December 31, 2011 | 8,580,000 | 600,000 |
| January 1, 2012 | - | December 31, 2012 | 9,286,000 | 650,000 |
| January 1, 2013 | - | December 31, 2013 | 10,000,000 | 700,000" |

4.    The License Agreement is hereby amended by deleting Section 6(d) in its entirety and replacing it with the following:

"6(d)  Licensee shall have the exclusive right to establish prices and terms for the sale of Licensed Products. Licensee shall provide Licensor, in advance of each selling season, with line sheets and price lists, and Licensee shall promptly notify Licensor of any change in pricing. Licensee agrees to sell to Licensor such quantities of Licensed Products, from time to time, as requested by Licensor for promotional purposes and for sale in stores and websites operated by Licensor or its Affiliates, licensees and/or subcontractors for prices equal to the lesser of thirty percent (30%) percent below Licensee's normal wholesale selling prices at the time of any such sale, or the lowest price charged by Licensee to any of its customers.   Such sales shall constitute Net Sales for purposes of computing Minimum Net Sales but a reduced Royalty of five and one half percent (5.5%) of such sales price shall be payable to Licensor and no Advertising Payment shall be due thereon."

5.    The License Agreement is hereby amended by deleting the Licensor notice information in Section 14 and replacing it with the following:

If to Licensor:

Phat Fashions LLC
512 Seventh Avenue, 43rd Floor
New York, NY 10018
Attention:    Mr. Bernt Ullmann

463107

with a copy to:

    Pryor Cashman Sherman & Flynn LLP
    410 Park Avenue, 10th Floor
    New York, New York 10022
    Attention:    Brad D. Rose, Esq.

    and

    Kellwood Company
    600 Kellwood Parkway
    Chesterfield, MO 63017
    Attention: Corporate Secretary/Legal Department"

    6.    Except as modified by this Amendment, all terms and conditions of the License Agreement shall remain in full force and effect.

    7.    This Amendment may be signed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Facsimile copies of counterpart signature pages shall be deemed original counterpart pages for all purposes hereunder

    8.    This Amendment shall be governed by, and construed in accordance with, the law of the State of New York applicable to contracts made and to be performed in the State of New York, without regard to conflicts of law principles.

    9.    In the event one or more of the provisions of this Amendment should, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions of this Amendment, and this Amendment shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

[signature appears on next page]

463107

**IN WITNESS WHEREOF,** this Amendment has been executed and delivered by the parties hereto as of the date first above written.

PHAT FASHIONS, LLC

By:_____
    Name:
    Title:

By:_____
    Name:
    Title:

Tornado Imports (Canada), Inc.

By:_____
    Name:
    Title:

463107

# EXHIBIT TO DECEMBER 10, 2007 DECLARATION OF PHILIP R. HOFFMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

## PHAT FASHIONS LLC V. TORNADO IMPORTS (CANADA), INC.
### Case No.: 07 Civ. 3278 (PAC)

# EXHIBIT 16



IMPORTATIONS
**TORNADO**
IMPORTS INC.

March 30, 2006

Eli B. Nathanson
Pryor Cashman Sherman & Flynn LLP
410 Park Avenue, 10th Floor
New York, NY  10022.

Dear Mr. Nathanson,

It was a pleasure speaking with you yesterday.  As discussed, please find two signed originals

of  the amendment to the Phat Farm license agreement.

If you should require further originals, please do not hesitate to call.

Best regards,

Barry Segal
V.P. Finance



5540 RUE FERRIER, MONTREAL, QC H4P 1M2  TEL: 514-731-7070, FAX : 514-733-8533 E-MAIL:

# AMENDMENT NO. 1

## TO

## TRADEMARK LICENSE AGREEMENT

**AMENDMENT NO. 1,** effective as of March __, 2006 (this "Amendment") to Trademark License Agreement, between Phat Fashions LLC, a New York limited liability company with offices at 512 Seventh Avenue, 43rd Floor, New York, NY 10018 ("Licensor"), and Tornado Imports (Canada), Inc., a company organized under the laws of Canada, with offices at 5540 Rue Ferrier, Montreal, P.Q. Canada H4P 1M2 ("Licensee").

**WHEREAS,** Licensor and Licensee are parties to that certain Trademark License Agreement, dated as of August 1, 1998 (the "License Agreement"). Capitalized terms used and not defined herein shall have the respective meanings assigned to them in the License Agreement; and

**WHEREAS,** the parties desire to amend the License Agreement to provide for, among other things, additional Renewal Terms, as hereinafter set forth.

**NOW, THEREFORE,** in consideration of the premises and mutual agreements herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    The License Agreement is hereby amended by adding the following new Section 3(d):

"3(d) Provided Licensee shall have exercised the Second Option, and provided that Licensee shall not be in default with respect to any of its obligations hereunder and provided further that Licensee shall have both paid one hundred percent (100%) of the GMR and achieved Net Sales during each Annual Period of the Second Option Term of no less than seventy five percent (75%) percent of the Minimum Net Sales for such Annual Period, Licensee shall be given an option (the "Third Option") to extend the Term of this Agreement for three (3) additional years to commence January 1, 2008, and to end December 31, 2010 (the "Third Option Term"), which Third Option must be exercised in writing in the same manner as notices hereunder and received by Licensor no earlier than March 1, 2007, and no later than June 30, 2007, time being of the essence."

2.    The License Agreement is hereby amended by adding the following new Section 3(e):

"3(e) Provided Licensee shall have exercised the Third Option, and provided that Licensee shall not be in default with respect to any of its obligations hereunder and provided further that Licensee shall have both paid one hundred percent (100%) of the GMR and achieved Net Sales during each Annual Period of the Third Option Term of no less than seventy five percent (75%) percent of the Minimum Net Sales, Licensee shall be given an option (the "Fourth Option") to extend the Term of this Agreement for three (3) additional years to commence January 1, 2011, and to end December 31, 2013 (the "Fourth Option Term"), which Fourth

463107

TOR 000902

Option must be exercised in writing in the same manner as notices hereunder and received by Licensor no earlier than March 1, 2010, and no later than June 30, 2010, time being of the essence."

3.     Section 4(f) of the License Agreement is hereby amended by adding the following Minimum Net Sales and GMR figures for the Third Option Period and the Fourth Option Period, as follows:

| "Annual Periods During Term | | | Minimum Net Sales | GMR |
|---|---|---|---|---|
| **Third Option Period** | | | | |
| January 1, 2008 | - | December 31, 2008 | $  5,000,000 | $    350,000 |
| January 1, 2009 | - | December 31, 2009 | 6,430,000 | 450,000 |
| January 1, 2010 | - | December 31, 2010 | 7,858,000 | 550,000 |
| **Fourth Option Period** | | | | |
| January 1, 2011 | - | December 31, 2011 | 8,580,000 | 600,000 |
| January 1, 2012 | - | December 31, 2012 | 9,286,000 | 650,000 |
| January 1, 2013 | - | December 31, 2013 | 10,000,000 | 700,000" |

4.     The License Agreement is hereby amended by deleting Section 6(d) in its entirety and replacing it with the following:

"6(d)  Licensee shall have the exclusive right to establish prices and terms for the sale of Licensed Products. Licensee shall provide Licensor, in advance of each selling season, with line sheets and price lists, and Licensee shall promptly notify Licensor of any change in pricing. Licensee agrees to sell to Licensor such quantities of Licensed Products, from time to time, as requested by Licensor for promotional purposes and for sale in stores and websites operated by Licensor or its Affiliates, licensees and/or subcontractors for prices equal to the lesser of thirty percent (30%) percent below Licensee's normal wholesale selling prices at the time of any such sale, or the lowest price charged by Licensee to any of its customers.  Such sales shall constitute Net Sales for purposes of computing Minimum Net Sales but a reduced Royalty of five and one half percent (5.5%) of such sales price shall be payable to Licensor and no Advertising Payment shall be due thereon."

5.     The License Agreement is hereby amended by deleting the Licensor notice information in Section 14 and replacing it with the following:

If to Licensor:

Phat Fashions LLC
512 Seventh Avenue, 43rd Floor
New York, NY 10018
Attention:     Mr. Bernt Ullmann

463107

with a copy to:

  Pryor Cashman Sherman & Flynn LLP
  410 Park Avenue, 10th Floor
  New York, New York 10022
  Attention:  Brad D. Rose, Esq.

  and

  Kellwood Company
  600 Kellwood Parkway
  Chesterfield, MO 63017
  Attention:  Corporate Secretary/Legal Department"

  6.  Except as modified by this Amendment, all terms and conditions of the License Agreement shall remain in full force and effect.

  7.  This Amendment may be signed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Facsimile copies of counterpart signature pages shall be deemed original counterpart pages for all purposes hereunder

  8.  This Amendment shall be governed by, and construed in accordance with, the law of the State of New York applicable to contracts made and to be performed in the State of New York, without regard to conflicts of law principles.

  9.  In the event one or more of the provisions of this Amendment should, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions of this Amendment, and this Amendment shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

      [signature appears on next page]

463107

**IN WITNESS WHEREOF,** this Amendment has been executed and delivered by the parties hereto as of the date first above written.

PHAT FASHIONS, LLC

By:_____
    Name:
    Title:

By:_____
    Name:
    Title:

Tornado Imports (Canada), Inc.

By:_____
    Name: *ISSEE WAEMAN*
    Title: *DIRECTOR*

463107

TOR 000905



FedEx Express
Customer Support Trace
3875 Airways Boulevard
Module H, 4th Floor
Memphis, TN 38116

U.S. Mail: PO Box 727
Memphis, TN 38194-4643

Telephone: 901-369-3600

February 20, 2007

Dear Customer:

The following is the proof of delivery you requested with the tracking number **790867523151**.

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivery location: | 410 PARK AVE 10 FL |
| Signed for by: | M.FOFANAH | Delivery date: | Mar 31, 2006 09:52 |
| Service type: | International Priority Service | | |



---

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 790867523151 | Ship date: | Mar 30, 2006 |

Recipient:
ELI B. NATHANSON
PRYOR CASHMAN SHERMAN & FLYNN
410 PARK AVENUE
10TH FLOOR
NEW YORK, NY 10022 US
Reference

Shipper:
EVELYN VANEGAS
TYFOON INTERNATIONAL
5540 FERRIER
MONTREAL, PQ H4P1M2 CA

FINANCIAL DOCUMENTS

Thank you for choosing FedEx Express.

FedEx Worldwide Customer Service
1.800.GoFedEx 1.800.463.3339

TOR 000906

# EXHIBIT TO DECEMBER 10, 2007 DECLARATION OF PHILIP R. HOFFMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

## PHAT FASHIONS LLC V. TORNADO IMPORTS (CANADA), INC.
## Case No.:  07 Civ. 3278 (PAC)

# EXHIBIT 17

# Pryor Cashman Sherman & Flynn llp

NEW YORK   ALBANY   LOS ANGELES

410 PARK AVENUE, NEW YORK, NY  10022-4441  TEL: 212-421-4100  FAX: 212-326-0806

www.pryorcashman.com

DIRECT TEL: 212-326-0894
DIRECT FAX: 212-798-6347
enathanson@pryorcashman.com

April 5, 2006

**BY HAND**

Mr. Peter Morris
Phat Fashions, LLC
512 Seventh Avenue, 29th Floor
New York, NY  10018

> Re:    **Phat Fashions/Tornado– Amendment No. 1 to License Agreement–
> Execution**

Dear Peter:

Enclosed please find two (2) partially executed originals of the Amendment No. 1 to the License Agreement among the above reference parties.

Please arrange to have countersigned where indicated and return one (1) fully executed original to me.  Please keep one (1) original for your records.  Thanks.

Please be sure to call me with questions.  Best regards.

Very truly yours,

Eli B. Nathanson /ymz

Eli B. Nathanson

cc:    Mr. Bernt Ullmann
       Donald J. Gramke, Esq.
       Ms. Jan Wooten
       Brad D. Rose, Esq.

465626


PLAINTIFF'S
EXHIBIT

**PF  0153**

# EXHIBIT TO DECEMBER 10, 2007 DECLARATION OF PHILIP R. HOFFMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

## PHAT FASHIONS LLC V. TORNADO IMPORTS (CANADA), INC.
### Case No.:  07 Civ. 3278 (PAC)

# EXHIBIT 18



# AMENDMENT NO. 1

## TO

### TRADEMARK LICENSE AGREEMENT

AMENDMENT NO. 1, effective as of March __, 2006 (this "Amendment") to Trademark License Agreement, between Phat Fashions LLC, a New York limited liability company with offices at 512 Seventh Avenue, 43rd Floor, New York, NY 10018 ("Licensor"), and Tornado Imports (Canada), Inc., a company organized under the laws of Canada, with offices at 5540 Rue Ferrier, Montreal, P.Q. Canada H4P 1M2 ("Licensee").

WHEREAS, Licensor and Licensee are parties to that certain Trademark License Agreement, dated as of August 1, 1998 (the "License Agreement"). Capitalized terms used and not defined herein shall have the respective meanings assigned to them in the License Agreement; and

WHEREAS, the parties desire to amend the License Agreement to provide for, among other things, additional Renewal Terms, as hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and mutual agreements herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  The License Agreement is hereby amended by adding the following new Section 3(d):

"3(d) Provided Licensee shall have exercised the Second Option, and provided that Licensee shall not be in default with respect to any of its obligations hereunder and provided further that Licensee shall have both paid one hundred percent (100%) of the GMR and achieved Net Sales during each Annual Period of the Second Option Term of no less than seventy five percent (75%) percent of the Minimum Net Sales for such Annual Period, Licensee shall be given an option (the "Third Option") to extend the Term of this Agreement for three (3) additional years to commence January 1, 2008, and to end December 31, 2010 (the "Third Option Term"), which Third Option must be exercised in writing in the same manner as notices hereunder and received by Licensor no earlier than March 1, 2007, and no later than June 30, 2007, time being of the essence."

2.  The License Agreement is hereby amended by adding the following new Section 3(e):

"3(e) Provided Licensee shall have exercised the Third Option, and provided that Licensee shall not be in default with respect to any of its obligations hereunder and provided further that Licensee shall have both paid one hundred percent (100%) of the GMR and achieved Net Sales during each Annual Period of the Third Option Term of no less than seventy five percent (75%) percent of the Minimum Net Sales, Licensee shall be given an option (the "Fourth Option") to extend the Term of this Agreement for three (3) additional years to commence January 1, 2011, and to end December 31, 2013 (the "Fourth Option Term"), which Fourth

Option must be exercised in writing in the same manner as notices hereunder and received by Licensor no earlier than March 1, 2010, and no later than June 30, 2010, time being of the essence."

3.    Section 4(f) of the License Agreement is hereby amended by adding the following Minimum Net Sales and GMR figures for the Third Option Period and the Fourth Option Period, as follows:

| "Annual Periods During Term | | | Minimum Net Sales | GMR |
|---|---|---|---|---|
| **Third Option Period** | | | | |
| January 1, 2008 | - | December 31, 2008 | $ 5,000,000 | $ 350,000 |
| January 1, 2009 | - | December 31, 2009 | 6,430,000 | 450,000 |
| January 1, 2010 | - | December 31, 2010 | 7,858,000 | 550,000 |
| **Fourth Option Period** | | | | |
| January 1, 2011 | - | December 31, 2011 | 8,580,000 | 600,000 |
| January 1, 2012 | - | December 31, 2012 | 9,286,000 | 650,000 |
| January 1, 2013 | - | December 31, 2013 | 10,000,000 | 700,000" |

4.    The License Agreement is hereby amended by deleting Section 6(d) in its entirety and replacing it with the following:

"6(d)  Licensee shall have the exclusive right to establish prices and terms for the sale of Licensed Products. Licensee shall provide Licensor, in advance of each selling season, with line sheets and price lists, and Licensee shall promptly notify Licensor of any change in pricing. Licensee agrees to sell to Licensor such quantities of Licensed Products, from time to time, as requested by Licensor for promotional purposes and for sale in stores and websites operated by Licensor or its Affiliates, licensees and/or subcontractors for prices equal to the lesser of thirty percent (30%) percent below Licensee's normal wholesale selling prices at the time of any such sale, or the lowest price charged by Licensee to any of its customers.  Such sales shall constitute Net Sales for purposes of computing Minimum Net Sales but a reduced Royalty of five and one half percent (5.5%) of such sales price shall be payable to Licensor and no Advertising Payment shall be due thereon."

5.    The License Agreement is hereby amended by deleting the Licensor notice information in Section 14 and replacing it with the following:

If to Licensor:

Phat Fashions LLC
512 Seventh Avenue, 43rd Floor
New York, NY 10018
Attention:    Mr. Bernt Ullmann

463107

with a copy to:

    Pryor Cashman Sherman & Flynn LLP
    410 Park Avenue, 10th Floor
    New York, New York 10022
    Attention:    Brad D. Rose, Esq.

    and

    Kellwood Company
    600 Kellwood Parkway
    Chesterfield, MO 63017
    Attention:  Corporate Secretary/Legal Department"

    6.    Except as modified by this Amendment, all terms and conditions of the License Agreement shall remain in full force and effect.

    7.    This Amendment may be signed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Facsimile copies of counterpart signature pages shall be deemed original counterpart pages for all purposes hereunder

    8.    This Amendment shall be governed by, and construed in accordance with, the law of the State of New York applicable to contracts made and to be performed in the State of New York, without regard to conflicts of law principles.

    9.    In the event one or more of the provisions of this Amendment should, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions of this Amendment, and this Amendment shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

<div align="center">[signature appears on next page]</div>

IN WITNESS WHEREOF, this Amendment has been executed and delivered by the parties hereto as of the date first above written.

PHAT FASHIONS, LLC

By:_____
    Name:
    Title:

By:_____
    Name: Russell Simmons
    Title: CEO

Tornado Imports (Canada), Inc.

By:_____
    Name: ESSIE WISEMAN
    Title: DIRECTOR.

463107

**PF 0157**

# EXHIBIT TO DECEMBER 10, 2007 DECLARATION OF PHILIP R. HOFFMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

## <u>PHAT FASHIONS LLC V. TORNADO IMPORTS (CANADA), INC.</u>
### Case No.:  07 Civ. 3278 (PAC)

# EXHIBIT 19



**Don Gramke/Kellwood**
04/21/2006 11:36 AM

To   Peter Morris/Kellwood@Kellwood
cc   Cory Isom/Kellwood@Kellwood
bcc
Subject   Phat Farm  Tornado License Amendment

Peter - since the numbers are changing, this will need to be signed by Bob.  I am preparing a summary of the amendment.   Please forward the amendments to me and I will get Bob to sign.  Thx.  Don

Donald J. Gramke
Associate General Counsel
Kellwood Company
600 Kellwood Parkway
Chesterfield, MO 63017

don.gramke@kellwood.com

(314)576-3203
(314)576-3388 (fax)

The information contained in this email message is legally privileged and confidential information intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please destroy it and remove it immediately from your PC and server, and notify us by return email that is was received in error.
Peter Morris/Kellwood

**Peter Morris/Kellwood**
04/12/2006 04:16 PM

To   don.gramke@kellwood.com
cc   Bernt Ullmann/Kellwood@Kellwood
Subject   Tornado amendment

Don,

I have this amendment signed by the licensee, Tornado, and by Russell. One more signature is required on behalf of Phat Fashions. There is no legal initial on the document. Can Bernt sign this.

Regards,

Peter



**PF  0160**

# EXHIBIT TO DECEMBER 10, 2007 DECLARATION OF PHILIP R. HOFFMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

## PHAT FASHIONS LLC V. TORNADO IMPORTS (CANADA), INC.
### Case No.:  07 Civ. 3278 (PAC)

# EXHIBIT 20

**Hoffman, Philip R.**

| | |
|---|---|
| **From:** | Peter.Morris@kellwood.com |
| **Sent:** | Saturday, April 22, 2006 11:51 AM |
| **To:** | don.gramke@kellwood.com |
| **Cc:** | Bernt.Ullmann@kellwood.com; Cory.Isom@kellwood.com; Nathanson, Eli B. |
| **Subject:** | License agreement amendments for Bob's Signature |

Don,

I have three signed licensee agreement amendments for your initials and Bob's signature:

Tornado - Canadian Licensee - granting extension option - two sets for signature

Modo - Eyewear licensee - amended minimums - four sets for signature

Silver Goose - Boxed Sets licensee - correcting off-price royalty rates - four sets for signature

Please return all executed copies to my attention. Thank you.

Regards,

Peter

10/3/2007



PLAINTIFF'S EXHIBIT 20

PF 0162

# EXHIBIT TO DECEMBER 10, 2007 DECLARATION OF PHILIP R. HOFFMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

## <u>PHAT FASHIONS LLC V. TORNADO IMPORTS (CANADA), INC.</u>
### Case No.:  07 Civ. 3278 (PAC)

# EXHIBIT 21

Bernt Ullmann /Kellwood
05/11/2006 07:47 PM

To    Don Gramke/Kellwood@Kellwood
cc    Peter Morris/Kellwood, Annie Walker/Kellwood
bcc
Subject    Re: Tornado - Canada Phat Farm License - Question

Don,

Tornado deals directly with all the factories so they do not buy from Phat.

They represent all Phat categories with the exceptions you mention below.

Bernt
----------------------------
Sent from my BlackBerry Wireless Handheld
Don Gramke

> From: Don Gramke
> Sent: 05/11/2006 02:07 PM
> To: Bernt Ullmann
> Cc: Peter Morris
> Subject: Tornado - Canada Phat Farm License - Question

Bernt - I am doing the summary for the above license extension/renewal.  What are the Phat Farm products that Tornado sells?  Do they buy all their products from Phat Wholesale?  The license defines the licensed products as:

All Phat Farm Products excluding:

a)     Men's and boy's underwear, loungewear, backpacks, bags, hipsters, and related products;
b)     Women's and girl's dresses, outerwear, swimwear, cover-ups, exercise-wear, lingerie, slip dresses and plus sizes;
c)     Home furnishings;
d)     Fragrances, cosmetics, and beauty aids; and
e)     Luggage.

I want to make clear in the extension summary what the licensed products are.  Thx.  Don

_____

Donald J. Gramke
Associate General Counsel
Kellwood Company
600 Kellwood Parkway
Chesterfield, MO 63017

don.gramke@kellwood.com

(314)576-3203
(314)576-3388 (fax)

The information contained in this email message is legally privileged and confidential information intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please destroy it and remove it immediately from your PC and server, and notify us by return email that is was received in error.

PLAINTIFF'S
EXHIBIT
21

PF 0166

# EXHIBIT TO DECEMBER 10, 2007 DECLARATION OF PHILIP R. HOFFMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

## PHAT FASHIONS LLC V. TORNADO IMPORTS (CANADA), INC.
### Case No.:  07 Civ. 3278 (PAC)

# EXHIBIT 22

Bernt Ullmann /Kellwood
05/23/2006 06:39 AM

To   Don Gramke/Kellwood@Kellwood

cc   Peter Morris/Kellwood, Annie Walker/Kellwood

bcc

Subject   Re: Tornado - Amendment Summary for your Review and Approval

Don,

Bob has asked me to hold off on Canada.

I will review the summary and then discuss with Bob.

Thank you,

Bernt
--------------------------
Sent from my BlackBerry Wireless Handheld
   Don Gramke

      **From: Don Gramke**
      **Sent: 05/23/2006 06:18 AM**
      **To: Bernt Ullmann**
      **Cc: Peter Morris**
      **Subject: Tornado - Amendment Summary for your Review and Approval**

Bernt - please see the attached.   If you and Peter are OK as it is written, please initial the first page and return to me so I can submit the final amendments to Bob Skinner for signature.

I am also attaching the current license summary(dated 7-1-04) for reference.

Thanks.  Don

5-23-06.DraftAmend.Summary.doc

7-1-04.TornadoLicSummary.doc

Donald J. Gramke
Associate General Counsel
Kellwood Company
600 Kellwood Parkway
Chesterfield, MO 63017

don.gramke@kellwood.com

(314)576-3203
(314)576-3388 (fax)

PLAINTIFF'S EXHIBIT 22

The information contained in this email message is legally privileged and confidential information intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited .  If you have received this communication in error, please destroy it and remove it immediately from your PC and

server, and notify us by return email that is was received in error.

PF 0168

**LEGAL DEPARTMENT**
**MEMORANDUM**

DRAFT

Bernt Ullmann
Approval _____

| | |
|---|---|
| **Date:** | May __, 2006 |
| **To:** | Bob Skinner |
| **From:** | Don Gramke |
| **Subject:** | License Extension – Phat Farm®/Tornado Imports (Canada) |
| **Copy to:** | R. Simmons, B. Ullmann, L. Capps, G. Kleffner, P. Morris, S. Walmsley, A. Scholin, A. Walker |

- Attached is the current executive summary of the above license.

- Following are the terms of a proposed amendment and extension of this license beyond the current expiration of December 31, 2007:

| | |
|---|---|
| **Licensor:** | Phat Fashions, LLC |
| **Licensee:** | Tornado Imports (Canada), Inc. |
| **Licensed Marks:** | Phat Farm® |
| **Licensed Products:** | All Phat Farm Products excluding: |

      a) Men's and boy's underwear, loungewear, backpacks, bags, hipsters, and related products;
      b) Women's and girl's dresses, outerwear, swimwear, cover-ups, exercise-wear, lingerie, slip dresses and plus sizes;
      c) Home furnishings;
      d) Fragrances, cosmetics, and beauty aids; and
      e) Luggage.
      *[Schedule C]*

| | |
|---|---|
| **Present License Term/Expiration:** | January 1, 2005 – December 31, 2007 (exercised by renewal letter from Licensee dated March 10, 2004) *[§3(c)]* |
| **First Extended Renewal Option:** | January 1, 2008 – December 31, 2010, to be exercised between March 1, 2007 – June 30, 2007 *[§3(d)]* |
| **Second Extended Renewal Option:** | January 1, 2011 – December 31, 2013, to be exercised between March 1, 2010 – June 30, 2010 *[§3(e)]* |

**Guaranteed Minimum
Net Sales and Royalty
Payments:**

| Present Term | Minimum Net Sales (U.S. Dollars) | GMR (U.S. Dollars) |
|---|---|---|
| 1/1/05 – 12/31/05 | $1,800,000 | $126,000 |
| 1/1/06 – 12/31/06 | $2,000,000 | $140,000 |
| 1/1/07 – 12/31/07 | $2,200,000 | $154,000 |
| **First Extended Renewal Term** | **Minimum Net Sales (U.S. Dollars)** | **GMR (U.S. Dollars)** |
| 1/1/08 – 12/31/08 | $5,000,000 | $350,000 |
| 1/1/09 – 12/31/09 | $6,430,000 | $450,000 |
| 1/1/10 – 12/31/10 | $7,858,000 | $550,000 |
| **First Extended Renewal Term** | **Minimum Net Sales (U.S. Dollars)** | **GMR (U.S. Dollars)** |
| 1/1/11 – 12/31/11 | $8,580,000 | $600,000 |
| 1/1/12 – 12/31/12 | $9,286,000 | $650,000 |
| 1/1/13 – 12/31/13 | $10,000,000 | $700,000 |

*[§4(f)]*

Notwithstanding the foregoing, if Licensee's Minimum Net Sales in any Annual Period are not sufficient to provide for the GMR required for that Annual Period, Licensee shall not be deemed to be in default hereunder so long as Licensee's Net Sales shall equal no less than 75% of Minimum Net Sales for the applicable Annual Period and Licensee makes payment to Licensor of the full GMR required for that Annual Period.
*[§4(f)]*

**Tickler Dates:**     3/1/07*; 6/30/07*; 3/1/10**; 6/30/10**; 12/31/10 (license expires if not renewed); 6/30/13; 9/30/13;12/31/13 (license expires)

*notice of renewal of license to be provided between 3/1/07 – 6/30/07

** notice of renewal of license to be provided between 3/1/10 – 6/30/10

PF 0170



# KELLWOOD

**LEGAL DEPARTMENT
MEMORANDUM**

| | |
|---|---|
| **Date:** | July 1, 2004 |
| **To:** | File |
| **From:** | Stacy Mirkay |
| **Subject:** | **Phat Fashions – Tornado Imports, Trademark License Agreement dated August 1, 1998** |

---

| | |
|---|---|
| **Licensor:** | Phat Fashions, LLC |
| **Licensee:** | Tornado Imports (Canada), Inc. |
| **Licensed Marks:** | Phat Farm® |
| **Licensed Products:** | All Phat Farm Products <u>excluding</u>: |

    a)  Men's and boy's underwear, loungewear, backpacks, bags, hipsters, and related products;
    b)  Women's and girl's dresses, outerwear, swimwear, cover-ups, exercise-wear, lingerie, slip dresses and plus sizes;
    c)  Home furnishings;
    d)  Fragrances, cosmetics, and beauty aids; and
    e)  Luggage.
    *[Schedule C]*

| | |
|---|---|
| **Initial Term:** | August 1, 1998 – December 31, 2001 *[§3(a)]* |
| **First Renewal Option:** | January 1, 2002 – December 31, 2004 (exercised by renewal letter from Licensee dated March 20, 2001) *[§3(b)]* |
| **Second Renewal Option:** | January 1, 2005 – December 31, 2007 (exercised by renewal letter from Licensee dated March 10, 2004) *[§3(c)]* |
| **Territory:** | Canada *[§1]* |
| **Percentage Royalty:** | Full Price Royalty Rate – 7% of Net Sales *[§4]* |

PF 0171



# KELLWOOD

**Guaranteed Minimum Net Sales and Royalty Payments:**

| Initial Term | Minimum Net Sales (U.S. Dollars) | GMR (U.S. Dollars) |
|---|---|---|
| 8/1/98 – 12/31/99 | $600,000 | $42,000 |
| 1/1/00 – 12/31/00 | $800,000 | $56,000 |
| 1/1/01 – 12/31/01 | $1,000,000 | $70,000 |
| First Option Term | Minimum Net Sales (U.S. Dollars) | GMR (U.S. Dollars) |
| 1/1/02 – 12/31/02 | $1,200,000 | $84,000 |
| 1/1/03 – 12/31/03 | $1,400,000 | $98,000 |
| 1/1/04 – 12/31/04 | $1,600,000 | $112,000 |
| Second Option Term | Minimum Net Sales (U.S. Dollars) | GMR (U.S. Dollars) |
| 1/1/05 – 12/30/05 | $1,800,000 | $126,000 |
| 1/1/06 – 12/30/06 | $2,000,000 | $140,000 |
| 1/1/07 – 12/31/07 | $2,200,000 | $154,000 |

*[§4(f)]*

Notwithstanding the foregoing, if Licensee's Minimum Net Sales in any Annual Period are not sufficient to provide for the GMR required for that Annual Period, Licensee shall not be deemed to be in default hereunder so long as Licensee's Net Sales shall equal no less than 75% of Minimum Net Sales for the applicable Annual Period and Licensee makes payment to Licensor of the full GMR required for that Annual Period.
*[§4(f)]*

**Required Advertising Expenditures:** None.

**Channels of Distribution:** Federated Department Stores, Dayton Hudson Department Stores, Mercantile Department Stores, Nordstrom's, May Company, Belk's, Carter Hawley Hale (Dept. Store Division), Bon Ton, Saks Fifth Avenue, Neiman Marcus, Bonwit Teller, and Woodward and Lothrop. (Higher end specialty stores subject to prior written approval by Licensor)
*[Schedule B]*

**Seconds / Irregulars:** Licensee shall cut all labels and hangtags on defective merchandise ("seconds" or "irregulars") prior to shipment and shall disclose on any invoices with respect thereto that such merchandise consists of seconds or irregulars. *[§6(i)]*

**Contractor Compliance:** Any Manufacturer performing work for Licensee must execute and deliver to Licensor a Manufacturer's Agreement in the form substantially identical to that in *Schedule E* before commencing such work.

**Non-Compete:** Neither Licensee nor any of Licensee's Affiliates shall directly or indirectly manufacture,



# KELLWOOD

sell, or distribute similar products or merchandise under any license or label directed to the young urban male consumer market, unless Licensee maintains a separate sales force of qualified salespersons for its marketing of the Licensed Products pursuant to this agreement and a showroom maintained by Licensee for other products marketed by it. *[§6(f)]*

**Ticklers:**          1-1-07; 7-1-07; 10-1-07; 12-31-07 (Second Renewal Term ends on 12-31-07)

PF 0173

# EXHIBIT TO DECEMBER 10, 2007 DECLARATION OF PHILIP R. HOFFMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

## PHAT FASHIONS LLC V. TORNADO IMPORTS (CANADA), INC.
## Case No.:  07 Civ. 3278 (PAC)

# EXHIBIT 23

## Hoffman, Philip R.

**From:** Don.Gramke@Kellwood.com
**Sent:** Tuesday, May 23, 2006 7:52 AM
**To:** Nathanson, Eli B.
**Subject:** Fw: Tornado - Amendment Summary for your Review and Approval

Eli - FYI.   Bernt is holding off on this extension for now.   Thx.   Don

Donald J. Gramke
Associate General Counsel
Kellwood Company
600 Kellwood Parkway
Chesterfield, MO 63017

don.gramke@kellwood.com

(314)576-3203
(314)576-3388 (fax)

The information contained in this email message is legally privileged and confidential information intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please destroy it and remove it immediately from your PC and server, and notify us by return email that is was received in error.

----- Forwarded by Don Gramke/Kellwood on 05/23/2006 06:50 AM -----

Bernt Ullmann/Kellwood                              To   Don Gramke/Kellwood@Kellwood

05/23/2006 06:39 AM                                 cc   Peter Morris/Kellwood, Annie Walker/Kellwood

                                                    Subject  Re: Tornado - Amendment Summary for your Review and Approval

Don,

Bob has asked me to hold off on Canada.

I will review the summary and then discuss with Bob.

Thank you,

Bernt

-------------------------
Sent from my BlackBerry Wireless Handheld

        From: Don Gramke

10/3/2007



PF  0174

Sent: 05/23/2006 06:18 AM
To: Bernt Ullmann
Cc: Peter Morris
Subject: Tornado - Amendment Summary for your Review and Approval

Bernt - please see the attached.   If you and Peter are OK as it is written, please initial the first page and return to me so I can submit the final amendments to Bob Skinner for signature.

I am also attaching the current license summary(dated 7-1-04) for reference.

Thanks.   Don



5-23-06.DraftAmend.Summary.doc



7-1-04.TornadoLicSummary.doc

Donald J. Gramke
Associate General Counsel
Kellwood Company
600 Kellwood Parkway
Chesterfield, MO 63017

don.gramke@kellwood.com

(314)576-3203
(314)576-3388 (fax)

The information contained in this email message is legally privileged and confidential information intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please destroy it and remove it immediately from your PC and server, and notify us by return email that is was received in error.

10/3/2007

# EXHIBIT TO DECEMBER 10, 2007 DECLARATION OF PHILIP R. HOFFMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

## PHAT FASHIONS LLC V. TORNADO IMPORTS (CANADA), INC.
### Case No.:  07 Civ. 3278 (PAC)

# EXHIBIT 24

**Issie Wiseman**

| | |
|---|---|
| **From:** | "Steven Feiner" <sfeiner@bpjeans.com> |
| **To:** | <issie@tyfoon.com> |
| **Cc:** | "Scott London" <scott@bpjeans.com> |
| **Sent:** | Tuesday, June 13, 2006 7:30 PM |
| **Attach:** | oledata.mso; image001.png |
| **Subject:** | Baby Phat / Canada |

*baby phat*

Issie Wiseman
Vis a Vis / Tyfoon International
5540 Ferrier Street
Montreal, Quebec
Canada, H4P 1M2

June 13, 2006

Dear Issie,

As per our previous conversation, I have discovered that the following items are inhibiting the growth of Baby Phat throughout Canada. Please review my below stated concerns/comments and prepare your thoughts as to how you will be able to correct or revise the below and begin to grow your business to the level we all believe is achievable.

- The Canadian Retails should be more in line with the US Retails. Your 30% discount should allow you to take your retails down to an understandable level and work at a smaller mark, as we do with you.

- You allow your customer's to buy in an Open Stock format. We sell to our entire customer base in Prepacks, ensuring orders in multiples of 6's and 12's. Thus, your reorders either can not be fulfilled due to your specific needs in certain sizes or you cause serious inventory deficiencies due to your lack of initial planning. This problem can be easily solved by selling in Prepacks as we do AND booking more in your initial orders specifically in items that are basics and best sellers in your most popular sizes.

- Although we have proven the strength and growth of our Plus Size business, up until recently you have not followed our lead in this division. Your initial orders have been for specific retail stores instead of projections for the entire country. Again, you are depending again on our projections and stock.

PLAINTIFF'S
EXHIBIT
24

12/7/2006

TOR 001604

- Although we send you a complete line of samples, you continue to only sell the styles and colors off of your original buy. The customers should have the opportunity to view the entire collection, as it was meant to be presented. We have received multiple phone calls from Canadian Retail customers who have seen items on our website that were never offered to them.

- Your Fashion buy is disproportionate to ours in the US. Although you do buy some of these items from us, they should no longer be sold as mere tests or only to very particular stores. It is a large part of our business and should be for you also.

- For the past 2 years we have asked for selling reports from your largest customers, first and foremost BATA and now FREEDOM. Yet, we have never received any retail sales report or feedback. BATA has stated in meetings that we do not have enough of the kind of product that they can sell at the right price point. How can we affect their sales and our merchandise if we do not know what styles they really do and do not sell?

- Although you have doubled your business, it is truly disappointing that you are not at the level we expected after all these years. Canada should be achieving at least 10% of our business. This year we will do $125 million. You are targeted to come in around $3 million at cost.

- Based on feedback, I feel that you have never really addressed the "Mom and Pop" specialty store business. Rather you have focused on your own stores and larger chain stores. This being said, it seems a large customer based has been missed.

This is not personal, as you know I have always liked you. But, I see a deficiency here and have to analyze every account in order to maximize my business. I look forward to speaking with you very soon.

Sincerely,

Steven Feiner

12/7/2006

TOR 001605

**Claudia Michaels**

**From:** Claudia Michaels [cc@tyfoon.com]
**Sent:** Tuesday, July 25, 2006 4:53 PM
**To:** 'sfeiner@bpjeans.com'
**Subject:** FW: Baby Phat / Canada

Hi Lorraine,

As requested, please find our comments below and lets set up a time to conference call on Thursday. Please advise what time is convenient for you and I will try to set it up with Issie.

Thanks,
Claudia

----- Original Message -----
**From:** Steven Feiner
**To:** issie@tyfoon.com
**Cc:** Scott London
**Sent:** Tuesday, June 13, 2006 8:30 PM
**Subject:** Baby Phat / Canada

*baby phat*

Issie Wiseman
Vis a Vis / Tyfoon International
5540 Ferrier Street
Montreal, Quebec
Canada, H4P 1M2

June 13, 2006

Dear Issie,

As per our previous conversation, I have discovered that the following items are inhibiting the growth of Baby Phat throughout Canada. Please review my below stated concerns/comments and prepare your thoughts as to how you will be able to correct or revise the below and begin to grow your business to the level we all believe is achievable.

- **The Canadian Retails should be more in line with the US Retails. Your 30% discount should allow you to take your retails down to an understandable level and work at a smaller mark, as we do with you.**

We have rationalized our Canadian price structure to reflect the US retails plus exchange.

*I R*
*answer*

12/7/2006

TOR 001514

- **You allow your customer's to buy in an Open Stock format. We sell to our entire customer base in Prepacks, ensuring orders in multiples of 6's and 12's. Thus, your reorders either can not be fulfilled due to your specific needs in certain sizes or you cause serious inventory deficiencies due to your lack of initial planning. This problem can be easily solved by selling in Prepacks as we do AND booking more in your initial orders specifically in items that are basics and best sellers in your most popular sizes.**

*Or Prints.* We will commit for larger quantities initially and in our prepack scale. This should reduce our need and frequency of reorders and therefore minimize any inventory deficiencies created inadvertently by us.

- **Although we have proven the strength and growth of our Plus Size business, up until recently you have not followed our lead in this division. Your initial orders have been for specific retail stores instead of projections for the entire country. Again, you are depending again on our projections and stock.**

We anticipate with the hiring of the additional specialized plus size sales force we should be in a much better position to achieve substantial sales in this area. We as you believe that this is a growing are for Baby Phat in Canada.

- **Although we send you a complete line of samples, you continue to only sell the styles and colors off of your original buy. The customers should have the opportunity to view the entire collection, as it was meant to be presented. We have received multiple phone calls from Canadian Retail customers who have seen items on our website that were never offered to them.**

We will broaden our selection of styles and continue to show the line in its entirety.

- **Your Fashion buy is disproportionate to ours in the US. Although you do buy some of these items from us, they should no longer be sold as mere tests or only to very particular stores. It is a large part of our business and should be for you also.**

Due to the evolution of Baby Phat especially in the past year we have been able to acquire more of the fashion boutique type store and will definitely be able to increase shares in that market.

- **For the past 2 years we have asked for selling reports from your largest customers, first and foremost BATA and now FREEDOM. Yet, we have never received any retail sales report or feedback. BATA has stated in meetings that we do not have enough of the kind of product that they can sell at the right price point. How can we affect their sales and our merchandise if we do not know what styles they really do and do not sell?**

We do not receive reports on a regular basis from Bata or Freedom. Going forward we have requested that they supply us with weekly sell throughs that we will then forward on to you.

- **Although you have doubled your business, it is truly disappointing that you are not at the level we expected after all these years. Canada should be achieving at least 10% of our business. This year we will do $125 million. You are targeted to come in**

around $3 million at cost.

We have analyzed our sales performance by territory and in order to achieve improvement we are in the process of hiring an additional sales force as well as changing some of our present sales people in order to maximize potential by territory.

- **Based on feedback, I feel that you have never really addressed the "Mom and Pop" specialty store business. Rather you have focused on your own stores and larger chain stores. This being said, it seems a large customer based has been missed.**

When we started with Baby Phat we began with specialty stores and this remains our top priority. We have close to (200) non major stores in our books right now and are aiming to open many more. With the addition of plus sizes and high fashion boutiques we will surely increase our independent store business substantially.

We appreciate the above constructive comments and we look forward to reviewing them with you in detail. We feel strongly that the potential for BABY PHAT going forward in Canada is great.

This is not personal, as you know I have always liked you. But, I see a deficiency here and have to analyze every account in order to maximize my business. I look forward to speaking with you very soon.

Sincerely,

Steven Feiner

12/7/2006

**Claudia Michaels**

| | |
|---|---|
| **From:** | Lorraine Carlson [lorraine@bpjeans.com] |
| **Sent:** | Wednesday, July 26, 2006 10:37 PM |
| **To:** | issie@tyfoon.com; cc@tyfoon.com |
| **Subject:** | FW: Baby Phat / Canada |

Issie,

I am in receipt of your answers to the letter I sent you a few weeks ago, thank you very much. I would like to have a follow up conference call because I find the answers too broad and it seems like its just words. We still have many questions on why this would improve. I need to be honest with you, I feel that every time I give you a hard time for that month bookings increase. Even now with all the pressure going on I've reviewed your 3rd quarter booking for July (see attachment) you have $114,000 booked this year compared to last year of $209,000 on a plan of $230,000. August you have a $233,000 booked compared to $102,000 on a plan of $166.000. September you have $131,000 booked compared to $133,000 last year with a plan of $213,000. Your total bookings for 3rd quarter are $479,000 compared to $445,000 last year. For 4th quarter you have seen October and November so far. For October you have $131,000 booked compared to $132,000 last year with a plan of $228,000. November is $149,000 compared to $125,000 last year with a plan of $140,000. Right now were on pace to ship you somewhere under $1.5 million dollars at wholesale. I always told you I'd be honest, unless you have something significant to say we really need to have a serious heart to heart conversation. I just don't feel like your in a position to grow the business or have you and it's been too long. I need to either have resolution or need to be able to move on. Obviously at the end of the day looking at it black and white you'd have to agree. I'll do as much business in Greece as I do in the whole country of Canada and I only ship them during the summer. Please have Claudia coordinate a conference call as soon as possible with you and I and I'll include Scott London and Kathy Carr on my end.


Thank you,

Steven Feiner


Lorraine Carlson
Baby Phat
Executive Assistant
8700 Rex Road
Pico Rivera, CA  90660
323-724-8668 ext. 210
323-869-0805

## Issie Wiseman

| | |
|---|---|
| **From:** | "Issie Wiseman" <iwiseman@tyfoon.com> |
| **To:** | <sfeiner@bpjeans.com> |
| **Sent:** | Thursday, November 02, 2006 2:13 PM |
| **Subject:** | CANADA TRANSITION |

Hi Steven
I tried calling you yesterday to finalize the transition. Please call me
back.
Below is an email I received from my Toronto salesman today. It is self
explanatory. I know you do some outerwear in the collection, but we also
have Soho's specific outerwear collection. This Gary is acting
unprofessionaly and creating confusion in the marketplace. What business
does he have going into my salesmans office in the first place? As discussed
please help me to control the transition in a proper manner.
Regards
Issie
----- Original Message -----
From: "Bone" <adamslater@telus.blackberry.net>
To: "Issie Wiseman" <iwiseman@tyfoon.com>
Sent: Thursday, November 02, 2006 12:06 PM
Subject: BP outerwear


> Hi Issie,
>       Gary from Schott dropped in to my showroom today , I was out on
> apponts. He told Lizzie " well at least you still have the leathers&the
> bags".
>       He is telling everyone that he has the Outerwear, & as that is
> big for us Lizzie,& I am worried & concearned.
>        can't you do something to stop this, & straighten out this guy?
> Its upsetting the customers as welll.
>       Adam
>
>

**From:** Nancy [nancy@tyfoon.com]
**Sent:** Friday, December 08, 2006 12:21 PM
**To:** iwiseman@tyfoon.com
**Subject:** FW: 2.15 SAMPLE SHIPMENT

Hi Kathy,

My apologies for the late reply I was out of the office. Issie Wiseman, our CEO asked me to reply to your email. As requested, we have told our sales rep to forward samples back to us so we can send to your representative early next week. Our other sample line will be forwarded today.

Please be advised that Vis a Vis reserves all its rights and recourses regarding the termination by Baby Phat of the distribution agreement.

Regards,

-----Original Message-----
**From:** Kathy Carr [mailto:kcarr@bpjeans.com]
**Sent:** Wednesday, December 06, 2006 4:41 PM
**To:** nancy@tyfoon.com
**Cc:** Jennifer Weintraub
**Subject:** RE: 2.15 SAMPLE SHIPMENT

Hi Nancy,

Steven Feiner (our ceo) and Issie just had a discussion today about having your 2.15 samples sent to our new sales representative in Montreal.  Please send the samples to:

Gary Skolnik
555 Chabanel Quest
Suite R13
Montreal, QC, Canada
H2N 2H8
514-384-4484

If you have any questions please let me know.

It has been really nice working with you and I wish you all the best.  Although we will definitely be in contact while your orders are still shipping for 12.15 and 1.15.

Thanks,
Kathy

**From:** Nancy [mailto:nancy@tyfoon.com]
**Sent:** Wednesday, December 06, 2006 1:05 PM
**To:** Alofa Leifi
**Cc:** Kathy Carr; Lucia Marquez
**Subject:** RE: 2.15 SAMPLE SHIPMENT

Rec'd samples today.

Thank you,
**Nancy Cafaro**
**Baby Phat**

10/23/2007

Canada

-----Original Message-----
**From:** Alofa Leifi [mailto:aleifi@bpjeans.com]
**Sent:** Tuesday, December 05, 2006 8:08 PM
**To:** nancy@tyfoon.com
**Cc:** Kathy Carr; Lucia Marquez
**Subject:** 2.15 SAMPLE SHIPMENT

Hi Nancy,
Documents attached for Sample shipment of 12/04/06.
Please confirm receipt, thanks!
Alofa

10/23/2007

# EXHIBIT TO DECEMBER 10, 2007 DECLARATION OF PHILIP R. HOFFMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

## <u>PHAT FASHIONS LLC V. TORNADO IMPORTS (CANADA), INC.</u>
### Case No.:  07 Civ. 3278 (PAC)

# EXHIBIT 25



December 12, 2006

Issie Wiseman
Vis a Vis
5540 Ferrier Street
Montreal, Quebec
Canada H4P 1M2

     Re:    Termination of Vis a Vis Distribution of Baby Phat Products

Dear Issie:

     We write to confirm that the January 15, 2007 collection is the last Baby Phat collection you will be representing in Canada.  Specifically, you have requested and we have agreed to cancel your orders for the February 15 and March 15 collections.  As a result, you will no longer represent Baby Phat after the January 15 collection.

     If you have any questions, please do not hesitate to call.

Very truly yours,

Steven Feiner

8700 Rex Road, Pico Rivera, CA 90660
323-724-8668 Fax: 323-869-0805



PLAINTIFF'S EXHIBIT 25

# EXHIBIT TO DECEMBER 10, 2007 DECLARATION OF PHILIP R. HOFFMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

## PHAT FASHIONS LLC V. TORNADO IMPORTS (CANADA), INC.
### Case No.:  07 Civ. 3278 (PAC)

# EXHIBIT 26



# LAVERY, DE BILLY
#### LIMITED LIABILITY PARTNERSHIP
### BARRISTERS AND SOLICITORS

Richard A. Hinse
Direct Line: 514 877-2902
E-mail address: rhinse@lavery.qc.ca

Montreal, December 21, 2006

**WITHOUT PREJUDICE**

**E-MAIL, MESSENGER AND TELECOPIER**

Baby Phat LLC
8700 Rex Road
Pico Rivera, CA
90660

Attention: Mr. Steven Feiner
            President

Re:    Modes Vis-A-Vis Fashions (1997) Inc.
        vs. Baby Phat LLC

Sir:

We are the attorneys of Modes Vis-A-Vis Fashions (1997) Inc. ("Vis-A-Vis") in the above captioned matter and have received instructions to forward the present letter of demand to Baby Phat LLC ("Baby Phat").

On or about October 26, 2006, Baby Phat terminated, without notice, the long-standing distribution agreement between the parties. As you know, Vis-A-Vis has worked with commitment and success for about 7 years in the exclusive distribution and promotion of the Baby Phat apparel line in Canada. For this reason alone, it is all the more surprising that your decision was made without consultation or advance notice to Vis-A-Vis. The termination comes as a serious financial blow, and disrupts the goodwill relationship Vis-A-Vis has created in the industry in Canada over the years for the Baby Phat apparel line.

During the business relationship with Baby Phat, Vis-A-Vis has established a reliable network of continuous repeat wholesale business, provided invaluable input in the marketing and promotion of the Baby Phat apparel line and dealt effectively with customer issues and servicing.

To successfully accomplish its goals, Vis-A-Vis used highly motivated staff, incurred the expenses it considered appropriate to best serve the Baby Phat apparel line and customers, and acted responsively to your directives and corporate guidance in a team fashion. The business and goodwill it has created and maintained will continue to generate profits for innumerable seasons and years.

**Montreal**
Suite 4000
1 Place Ville Marie
Montreal, Quebec H3B 4M4
Telephone: 514 871-1522
Fax: 514 871-8977

Web Site
www.laverydebilly.com

**Quebec City**
Suite 500
925 Grande Allée Ouest
Quebec, Quebec G1S 1C1
Telephone: 418 688-5000
Fax: 418 688-3458

Trade-mark Agents

**Laval**
Suite 500
3080 boul. le Carrefour
Laval, Quebec H7T 2R5
Telephone: 450 978-8100
Fax: 450 978-8111

**Ottawa**
Suite 1810
360 Albert Street
Ottawa, Ontario K1R 7X7
Telephone: 613 594-4936
Fax: 613 594-8783


PLAINTIFF'S EXHIBIT 26

TOR 001320

# LAVERY, DE BILLY

LIMITED LIABILITY PARTNERSHIP

- 2 -

At the time of termination of the distribution agreement, Vis-A-Vis had already placed orders for 12.15 (2006) and 1.15, 2.15 and 3.15 (2007) deliveries and was awaiting to receive samples for 2.15 and 3.15 (2007).

Not only did Baby Phat not give reasonable notice to Vis-A-Vis regarding the termination of the distribution agreement and refused to agree on an orderly transition, but Baby Phat began immediately to promote and sell directly the Baby Phat apparel line in Canada including to the customers of Vis-A-Vis. Moreover, the sales representatives of Baby Phat indicated to the customers that in purchasing the apparel line from Baby Phat they would pay substantially less than the price charged by Vis-A-Vis since Baby Phat would now be selling direct. These wrongful acts caused serious prejudice to Vis-A-Vis and jeopardized any future sales.

In view of the serious prejudice caused, Vis-A-Vis had no alternative but to return with the acceptance of Baby Phat the samples for 2.15 (2007) and cancel those for 3.15 (2007). As to your letter to Vis-A-Vis dated December 12, 2006, Baby Phat is relying on its wrongful acts to no longer allow representation after the January 15 collection. This increases the prejudice caused to Vis-A-Vis.

The termination of the distribution agreement and the wrongful acts were illegal, unjustified and intentionally timed to cause Vis-A-Vis maximum detriment while Baby Phat appropriated maximum benefit.

Vis-A-Vis claims from Baby Phat the amount of US $1,000,000. in compensation for the damages resulting from the termination of the distribution agreement. Compensation must not only include reasonable notice but must also recognize the undisputable value added to your bottom line by Vis-A-Vis, and the time and investment it will take to permit it to restore the level and quality of business it had generated and maintained in working with Baby Phat. Vis-A-Vis also claims from Baby Phat the amount of US $500,000. for compensatory, exemplary and punitive damages resulting from Baby Phat's wrongful acts.

Unless payment of the sum of US $1,500,000. is received from Baby Phat within ten (10) days of your receipt hereof, we will have no alternative but to follow the instructions of Vis-A-Vis and institute against Baby Phat and all those legally responsible for the termination and wrongful acts, all legal proceedings required in the circumstances without further notice or delay.

Do govern yourselves accordingly.

LAVERY, DE BILLY

Richard A. Hinse

RAH/cb
c.c.  Vis-A-Vis

i:\txt\x6019\122327\00001\lettres\babyphat_demand_21-12-06.doc

# EXHIBIT TO DECEMBER 10, 2007 DECLARATION OF PHILIP R. HOFFMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

## PHAT FASHIONS LLC V. TORNADO IMPORTS (CANADA), INC.
### Case No.:  07 Civ. 3278 (PAC)

# EXHIBIT 27

# STIKEMAN ELLIOTT

Stikeman Elliott LLP    Barristers & Solicitors
1155 René Lévesque Blvd. West, 40th Floor, Montréal, Quebec, Canada H3B 3V2
Tel:(514) 397-3000  Fax: (514) 397-3222  www.stikeman.com

Bruno Barrette
Direct:  (514) 397-3297
Fax:    (514) 397-5448
E-mail: bbarrette@stikeman.com

**BY TELECOPIER**                                    January 24, 2007
**WITHOUT PREJUDICE**

Mtre Richard A. Hinse
Lavery, De Billy
1 Place Ville-Marie
Suite 4000
Montréal, Québec H3B 4M4

Dear Colleague:

RE:    **Vis-à-Vis Fashions (1997) Inc.**
       **vs. Baby Phat LLC**

We have been retained by BP Clothing LLC ("Baby Phat"), which has forwarded us your
letter of demand dated December 21st, 2006 addressed to Baby Phat LLC for immediate
attention and reply.

We strongly disagree with your position that Baby Phat acted illegally and in bad faith.
Our reasons are set forth below.

Baby Phat informed Vis-à-Vis over one year ago that it was exploring the possibility of
hiring a sales agent for Canada. This "position" was offered to your client, but it was
refused. Our client then managed to find an alternative solution for the sale of its
products in Canada.

It could hardly, therefore, have come as a surprise to your client when it received the
Termination Notice in October 2006. This Notice granted your client a six-month period
in which to properly adapt its business and manage the transition. This amount of
Notice was more than reasonable, it was generous. From that date forward, Baby Phat
began to establish direct contact with Canadian customers, but only with respect to the
line of apparel that would become available on April 15th, 2007.

It was your client who unilaterally decided to cancel its orders for the February 15th and
March 15th, 2007 collections. We are hard pressed to understand how your client may
now contend in good faith that the termination was illegal and the notice was
insufficient given the fact that it didn't take advantage of the full 6 month notice period
granted it by Baby Phat.

MONTREAL

TORONTO

OTTAWA

CALGARY

VANCOUVER

NEW YORK

LONDON

SYDNEY



STIKEMAN ELLIOTT                                    2

In addition, the precise nature of the relationship between our respective clients is less than clear.  Certainly, there is no written agreement between them, and it appears to us that your client has been little more than a non-exclusive wholesaler of our client's products for the past three years.  In that light, 6 months notice was more than generous.

Your client was well aware that Baby Phat has never been satisfied with the performance of Vis-à-Vis with respect to the variety of products available and the total sales figures in Canada. Despite numerous requests to obtain weekly and/or monthly selling reports, Vis-à-Vis never provided Baby Phat with this information.  As a result of this failure, Baby Phat did not have the information which could have allowed it to help Vis-à-Vis to increase its sales in Canada.

In light of the above, your client's position is unfounded and its claim is without justification or merit.   Any legal proceedings that might be instituted by Vis-à-Vis against Baby Phat will be vigorously contested. Moreover, Baby Phat fully intends to seek recovery by counterclaim of all costs that would be incurred in defending against any proceedings your client might institute, such proceedings being abusive, frivolous and entirely unfounded.

**DO GOVERN YOURSELVES ACCORDINGLY.**

Bruno Barrette

BB/dg

TOR 001325

# EXHIBIT TO DECEMBER 10, 2007 DECLARATION OF PHILIP R. HOFFMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

## PHAT FASHIONS LLC V. TORNADO IMPORTS (CANADA), INC.
### Case No.:  07 Civ. 3278 (PAC)

# EXHIBIT 28

SEP-06-2003  16:23                                    2124512222   P.02/96

Randy Friedberg (RF 8645)
Christine Wong (CW 7683)
Olshan Grundman Frome Rosenzweig &
Wolosky LLP
Attorneys for Plaintiff BP Clothing LLC

Park Avenue Tower
65 East 55th Street
New York, New York 10022-1106
Tel. No.: (212) 451-2300



UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JUDGE BUCHWALD

07 CV 2200

| | |
|---|---|
| BP CLOTHING LLC, a Delaware limited liability company, | |
| Plaintiff, | Case No. |
| v. | |
| MODES VIS á VIS FASHIONS, INC., a Canadian company, | COMPLAINT |
| Defendant. | |

Plaintiff BP Clothing LLC ("Plaintiff" or "BP Clothing") by its attorneys, Olshan

Grundman Frome Rosenzweig & Wolosky LLP, as and for its complaint against the defendant,

alleges as follows:

### GENERAL ALLEGATIONS
#### Jurisdiction and Venue

1.     This Court has jurisdiction over the claims alleged herein pursuant to 28 U.S.C. §

1332(a) because Plaintiff is a citizen of the State of Delaware, Defendant is a citizen or subject of

a foreign country, and the amount in controversy in this action exceeds $75,000.00.

2.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) because

Defendant has substantial contacts with and transacts business in this District.

PAGE 2/96 * RCVD AT 9/6/2007 4:15:02 PM [Eastern Daylight Time] * SVR:NY21/7 * DNIS:6369 * CSID:2124512222 * DURATION (mm-ss):171-06



PF 0234

### The Parties

3.    Plaintiff BP Clothing is a limited liability company organized and existing under the laws of the State of Delaware.

4.    Upon information and belief, defendant Modes Vis á Vis Fashions, Inc. ("Vis á Vis") is a Canadian company with its principal place of business in Montreal, Canada.

### The Relationship Between the Parties

5.    BP Clothing is the exclusive worldwide licensee of all rights to the famous BABY PHAT trademark for clothing.

6.    Since 1999, defendant Vis á Vis has been a non-exclusive distributor of BABY PHAT clothes in Canada.

7.    There is no and has never been any written distribution agreement between the parties.

8.    BP Clothing received periodic purchase orders from Vis á Vis and delivered the BABY PHAT clothes pursuant to such purchase orders.

9.    BP Clothing has performed on every accepted purchase order it has received from Vis á Vis.

10.    Vis á Vis has an unpaid balance from several of these deliveries dating back to November 2006.  Vis á Vis has failed and refused to pay the invoices, despite repeated demands for payment.

11.    Defendant's only rationale for non-payment is the irrelevant allegation that Plaintiff improperly terminated its distribution rights for Canada.

2

PF 0235

### BP Clothing's Termination of Vis a Vis

12.     BP Clothing was unhappy with Vis á Vis's performance in Canada.  BP Clothing informed Vis á Vis of its dissatisfaction in mid-2006, particularly with the fact that Vis á Vis never supplied weekly or monthly sales reports.  As early as January 2006, BP Clothing informed Vis á Vis that it was considering hiring a sales agent for Canada.

13.     On or about October 26, 2006, BP Clothing notified Vis á Vis that it desired to terminate Vis á Vis as a distributor in Canada.  The termination notice offered Vis á Vis a transition period of six-months.

14.     There is no agreement, written or oral, which grants defendant any notice of termination.  Nonetheless, Plaintiff did grant such notice to defendant.

### Vis a Vis' Response to the Termination Notice and Subsequent Demands

15.     At the time of the termination notice, Vis á Vis had already placed purchase orders for collections available on February 15, 2007 and March 15, 2007, which BP Clothing had accepted.

16.     Accordingly, when BP Clothing decided to contact its Canadian customers directly (after issuing the termination notice), it only discussed the collection available on April 15, 2007.

17.     Vis á Vis unilaterally decided to and did cancel its orders for February 15, 2007 and March 15, 2007.

18.     By doing so, Vis á Vis declined to take advantage of the six-month transition period that BP Clothing offered in its termination notice.

3

PF 0236

SEP-06-2003  16:25                                    2124512222   P.05/96

### FIRST CLAIM FOR RELIEF
#### (For Cost of Goods Sold and Delivered)

19.    Between November 16, 2006 and January 31, 2007, BP Clothing sold and delivered BABY PHAT clothes, pursuant to purchase orders placed by Vis á Vis, for the agreed and reasonable price of $403,124.05.

20.    There is no dispute that defendant Vis á Vis accepted the BABY PHAT clothes and invoices without objection. A copy of these invoices is annexed as Exhibit A.

21.    Defendant Vis á Vis has failed to pay the $403,124.05 that is due and owed, as reflected on the invoices. A statement of all unpaid invoices is annexed as Exhibit B.

22.    Wherefore plaintiff BP Clothing seeks judgment against Vis á Vis in the amount of $403,124.05, together with costs, attorney's fees, and interest.

### SECOND CLAIM FOR RELIEF
#### (For Declaratory Relief as Against Defendant Vis á Vis)

23.    Plaintiff repeats and realleges paragraphs 1 through 22, as though fully set forth herein.

24.    Plaintiff fully performed by delivering the BABY PHAT clothes to Vis á Vis, in response to various purchase orders. Therefore, Plaintiff is entitled to payment of the BABY PHAT clothes delivered.

25.    Defendant is not and never has been the exclusive distributor of BP Clothing in Canada. There is no evidence to suggest otherwise.

26.    · Defendant received notice as early as January 2006 that BP Clothing was seeking sales agents in Canada. In addition, the termination notice granted Defendant with a six-month transition period.

4

PF 0237

SEP-06-2003  16:26                                2124512222    P.06/96

27.     Plaintiff seeks a determination that it is rightfully owed monies for the sale and

delivery of said BABY PHAT clothes, that Defendant Vis à Vis was not the exclusive distributor

for BP Clothing in Canada, and that while no notice was required, BP Clothing gave Defendant

more than reasonable notice of its termination.

**WHEREFORE**, Plaintiff prays for the following judgment:

1.     On the First Claim for Relief, a determination that Plaintiff is entitled to recover

$403,124.05 from Defendant for the production and delivery of BABY PHAT clothes, together

with costs, attorney's fees, and interest;

2.     On the Second Claim for Relief, a determination that Plaintiff is rightfully owed

monies, that Defendant was not Plaintiff's exclusive distributor in Canada, and that although no

notice was necessary, Plaintiff gave Defendant reasonable notice of its termination; and

3.     For such other and further relief as the Court may deem just and proper.

Dated: New, York, New York
       March 13, 2007

                                    OLSHAN GRUNDMAN FROME
                                    ROSENZWEIG & WOLOSKY LLP

                          By:       _____
                                    Randy Friedberg (RF 8645)
                                    Christine Wong (CW 7683)
                                    *Attorneys for Plaintiff BP Clothing*
                                    Park Avenue Tower
                                    65 East 55th Street
                                    New York, New York 10022
                                    (212) 451-2300

5

PAGE 6/96 * RCVD AT 9/6/2007 4:16:02 PM [Eastern Daylight Time] * SVR:NY21/7 * DNIS:6369 * CSID:2124512222 * DURATION (mm-ss):171-06

PF 0238

# EXHIBIT TO DECEMBER 10, 2007 DECLARATION OF PHILIP R. HOFFMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

## PHAT FASHIONS LLC V. TORNADO IMPORTS (CANADA), INC.
## Case No.:  07 Civ. 3278 (PAC)

# EXHIBIT 29

## SETTLEMENT AGREEMENT AND RELEASE

This SETTLEMENT AGREEMENT AND RELEASE ("Agreement" or "Settlement Agreement") is entered into this 22ⁿᵈ day of March, 2007 by and between BP Clothing LLC, a Delaware limited liability company ("BP") with an address at 8700 Rex Road, Pico Rivera, CA 90660, and Modes Vis-A-Vis (1997) Inc., a Canadian company ("Vis-A-Vis"), with an address at 5540 Ferrier Street, Montreal, Quebec, Canada H4P 1M2.

WHEREAS, BP has the exclusive worldwide rights including, without limitation, in Canada, to use the registered BABY PHAT trademark on and in connection with women's clothing; and

WHEREAS, Vis-A-Vis was a distributor of BP's BABY PHAT clothing in Canada; and

WHEREAS, BP terminated that distribution relationship; and

WHEREAS, Vis-A-Vis made claims that BP improperly terminated the relationship and was, as a result, liable to Vis-A-Vis; and

WHEREAS, the parties have mutually agreed to terminate their relationship effective as of February 15, 2007; and

WHEREAS, Vis-A-Vis presently owes BP and/or its factor, First Capital [Western Region], the sum of Four Hundred Three Thousand One Hundred and Twenty Four Dollars and Five Cents ($403,124.05.) for goods purchased by Vis-A-Vis from BP and delivered by BP to Vis-A-Vis (the "Outstanding Sum"); and

WHEREAS, regardless of the merits of the parties' respective claims, the parties agree to settle their dispute on the terms set forth below.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises and covenants set forth below, the receipt and adequacy of which the parties hereby acknowledge, the parties agree as follows:

1.    Payments by Vis-A-Vis to BP

a.    Upon its execution hereof, Vis-A-Vis will pay by wire transfer to the account set forth below in paragraph 1(c) below the sum of Two Hundred Thousand ($200,000) Dollars. Time is of the essence with regard to this payment.

b.    On or before April 2, 2007, Vis-A-Vis will pay the balance of the Outstanding Sum Two Hundred Three Thousand One Hundred Twenty Four Dollars and Five Cents ($203,124.05.), by wire transfer to the account set forth below in paragraph 1(c) below. Time is of the essence with regard to this payment.

L:\...\5019\122327\00001\...\settlement_release.doc



PLAINTIFF'S EXHIBIT 29

c.    The settlement sums should be wired to:

> BP Clothing LLC
> Acct# 7193029621
> Wells Fargo Bank
> ABA # 121000248
> Swift add – WFBIUS6S

d.    In the event Vis-A-Vis fails to make any payment when due, and does not fix such default within two days after the date of written notice from BP, which notice may be sent via facsimile or overnight mail to the address set forth above for Vis-A-Vis, the release set forth below from BP to Vis-A-Vis shall be of no force and effect, the payment set forth in paragraph 2(a) from BP to Vis-A-Vis shall no longer be due, and BP shall be free to assert all claims it might have against Vis-A-Vis regarding the balance due it from Vis-A-Vis. In any resulting collection action, BP shall, in addition to all other rights and remedies it might posses, be entitled to recover its reasonable attorneys' fees and costs incurred in collecting the balance due it from Vis-A-Vis.

2.    <u>Payment by BP</u>

a.    Simultaneous with the second payment described in section 1(b) above, BP shall pay to Vis-A-Vis the sum of One Hundred and Twenty Five Thousand ($125,000) Dollars as a termination fee for any rights Vis-A-Vis might have to distribute BP BABY PHAT products in Canada. The parties agree any such rights terminated February 15, 2007, subject to the sell-off provided for in paragraph 3(b) below.

b.    The parties expressly acknowledge and agree that Vis-A-Vis may deduct the payment amount due Vis-A-Vis by BP from the second payment due BP and/or its factor, First Capital [Western Region] by Vis-A-Vis as described in paragraph 1(b) above. However, in the event Vis-A-Vis fails to make the second payment in a timely manner, BP shall no longer owe Vis-A-Vis the One Hundred and Twenty Five Thousand ($125,000) Dollars set forth in paragraph 2(a) above, and the full amount of Four Hundred Three Thousand One Hundred and Twenty Four Dollars and Five Cents ($403,124.05.), less any payments actually made by Vis-A-Vis to that date, shall be immediately due to BP.

3.    <u>Cessation of Distribution</u>

a.    Vis-A-Vis promises and agrees that it shall not in any manner contest the ownership by BP of the rights which are the subject of this Agreement or cooperate or join in any manner, with any third party in contesting such rights as against BP.

b.    Annexed hereto is an inventory report showing what Vis-à-vis represents as its remaining available goods for sale. Notwithstanding anything to the contrary set forth in this Agreement, and subject to Vis-A-Vis making all payments required under this Agreement in a timely manner, Vis-A-Vis shall have six (6) months from the date hereof to sell that remaining inventory of goods purchased from BP. All such sales shall be in the normal course of business.

TOR 001490

At the end of said six (6) month period, Vis-A-Vis shall either dispose of all left over merchandise without cost or expense to BP, or delete the BABY PHAT name and trademark from the merchandise and thereafter be free to sell it as Vis-A-Vis deems fit.

     c.     Other than as provided in paragraph 3(b) above, Vis-A-Vis will not hereafter promote, distribute or sell any BP BABY PHAT products without the express written permission of BP.

4.     <u>Release by BP</u>

     a.     Subject to receipt in full of the payments set forth in paragraph 1 above, BP knowingly, voluntarily, and unconditionally releases and forever discharges Vis-A-Vis and all of its present and former owners, officers, directors, shareholders, members, employees, agents, attorneys, successors, subsidiaries, parents, and assigns (collectively, the "Vis-A-Vis Parties") from any and all claims, demands, damages, actions or causes of action of whatever type or nature whether at law, equity or administrative proceeding, whether in tort, contract, statutory or otherwise, whether known or unknown, that any or all of the BP Parties (as defined in Paragraph 5 below) has or have or have had or may have against the Vis-A-Vis Parties based on or related in any way to moneys due for goods sold and delivered and/or the relationship between BP and Vis-A-Vis ("BP Released Claims").

     b.     BP warrants that this release was carefully read in its entirety by its representatives, and was and is understood and known to be a full and final compromise, settlement, release, accord and satisfaction and discharge of all claims, actions, and causes of action and suits known or unknown as set forth above.

     c.     BP warrants that this full release was signed and executed voluntarily.

     d.     BP warrants that its representative who executes this Agreement is duly appointed and authorized to represent and bind the legal entity and is of legal age and capacity and competent to sign and execute this release.

     e.     BP relies wholly on its own judgment and that of its attorneys in executing this Agreement.

     f.     BP warrants and represents that it has, either personally or through its attorneys, investigated, all the facts surrounding the various claims, controversies, and disputes and are satisfied that it has all of the facts and information necessary to enter into this Settlement.

5.     <u>Release by Vis-A-Vis</u>

     a.     Vis-A-Vis knowingly, voluntarily, and unconditionally and releases and forever discharges BP and all of its present and former owners, officers, directors, shareholders, members, employees, agents, attorneys, successors, subsidiaries, parents, and assigns (collectively the "BP Parties") from any and all claims, demands, damages, actions or causes of action of whatever type or nature whether at law, equity or administrative proceeding, whether in

TOR 001491

tort, contract, statutory or otherwise, whether known or unknown, that any or all of the Vis-A-Vis Parties has or have or have had or may have against the BP Parties based on or related in any way to moneys due for goods sold and delivered, and/or the relationship between BP and Vis-A-Vis ("Vis-A-Vis Released Claims").

        b.      Vis-A-Vis warrants that this release was first carefully read in its entirety by its representatives, and was and is understood and known to be a full and final compromise, settlement, release, accord and satisfaction and discharge of all claims, actions, and causes of action and suits known or unknown as set forth above.

        c.      Vis-A-Vis warrants that this full release was signed and executed voluntarily.

        d.      Vis-A-Vis warrants that its representative who executes this Agreement is duly appointed and authorized to represent and bind the legal entity and is of legal age and capacity and competent to sign and execute this release.

        e.      Vis-A-Vis relies wholly on its own judgment and that of its attorneys in executing this Agreement.

        f.      Vis-A-Vis warrants and represents that it has, either personally or through its attorneys, investigated, all the facts surrounding the various claims, controversies, and disputes and is satisfied that it has all of the facts and information necessary to enter into this Settlement.

    6.    <u>Non-disparagement and No Wrongdoing</u>

        a.      The parties hereto shall refrain from making any statement, whether oral or written, which disparages the other party, its members, directors, officers, executives, management, customers, consultants, agents, suppliers, products or services.

        b.      The parties hereto expressly acknowledge and covenant that this Agreement represents a settlement of disputed rights and claims, and that by entering into this Agreement no party admits or acknowledges the existence of any liabilities or wrongdoing, all such liabilities and wrongdoing being expressly denied in all respects.

    7.    <u>Confidentiality</u>

        a.      The parties covenant and agree that they shall hold in trust and keep secret the other party's Confidential Information (as defined in subsection (c) below) and that they shall not, and shall not permit others, including, but not limited to, their employees and agents, to publish, disclose, disseminate or issue any announcements or communications with respect to or concerning the Confidential Information of the other party or any portion thereof, except upon order of any court of competent jurisdiction or as may be reasonably necessary to enforce the terms of this Agreement, or, as requested or required to be furnished to regulatory agencies having jurisdiction over the parties. Notwithstanding anything to the contrary contained herein,

TOR 001492

each of the parties may disclose Confidential Information to its auditors, potential financing partners and affiliates.

b.    Each party shall promptly notify each other party if such party is served with an order of a court or a subpoena issued under the authority of a court to produce this Agreement or to disclose any of the terms of the Settlement or any of the Confidential Information produced in this case within three (3) business days of service thereof.  If a party to this Agreement breaches this provision, the non-breaching party shall have the right to take legal action to enforce this provision against the breaching party and shall be entitled to recover all reasonable attorneys' fees and costs associated with the enforcement of this provision .  Specifically, the parties agree that the court may enter an injunction against the breaching party and may enter any and all sanctions that the court would enter had an order of confidentiality been breached.

c.    For purposes of this Agreement, Confidential Information shall mean the specific terms and conditions of the parties' compromises as reflected in this Agreement, but not the fact of its existence, non-public pricing information, non-public customer lists, and all other trade secret information which one party disclosed to the other, if any.

8.    Bankruptcy

Each party hereto represents that it: (a) has not sought or retained counsel regarding filing a petition for bankruptcy within the past twelve (12) months; (b) has not considered filing a petition for bankruptcy in the twelve (12) months preceding the execution of this Agreement; and (c) has no reason to believe that either of them would file a petition for bankruptcy in the twelve (12) months following the execution of this Agreement.

9.    Construction of this Agreement

a.    This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their successors and assigns.

b.    All dollar amounts set forth in this Agreement are in United States Dollars.

c.    The parties each represent and warrant to the other that their own officer or other duly authorized representative executing this Agreement has the full power and authority to do so on their behalf and on behalf of all parties against whom the releases contained in this Agreement are effective.

d.    The parties agree that this Agreement can be modified only in writing signed by each of the parties.

e.    This Agreement shall be construed without regard to the rule or presumption requiring construction against the party who drafted this Agreement or caused it to be drafted. The parties hereto shall, and they hereby do, waive trial by jury with respect to any

TOR 001493

action brought by a party hereto against another party hereto on any matters whatsoever arising out of or in any way connected with this Agreement.

       f.    The parties agree that they have each read and understand this Agreement, that they understand its content and meaning, that they have executed it of their own free will in accordance with their own judgment, after having the opportunity to obtain the advice of counsel, and after having actually received advice of counsel. The parties agree that they have not been coerced, influenced, or induced to execute this Agreement by any improper action.

       g.    To facilitate the execution of this Agreement by the parties, this Agreement may be executed in subparts and a signature transmitted by facsimile shall have the same effect as an original signature.

    10.    <u>Entire Agreement; Merger; Parole Evidence</u>

       This Agreement shall constitute the entire agreement between the parties with respect to the subject matter herein and supercede all prior negotiations and agreements unless otherwise provided herein. Each party acknowledges and agrees that, in executing this Agreement, it is not relying on any representation or promise whatsoever that is not contained herein and that any such representation or promise is acknowledged to be immaterial. Accordingly, each party to this action waives the defense or claim of fraud in the inducement or mistake of law or fact to any claim arising our of, based on or related to this Agreement, except with respect to express representations set forth in this Agreement.

IN WITNESS WHEREOF, each of the parties has executed this Agreement, or has caused this Agreement to be executed by their duly authorized representatives, as of the date set forth above.

THIS AGREEMENT CONTAINS A RELEASE AND WAIVER. READ CAREFULLY BEFORE SIGNING.

BP CLOTHING LLC

By: _____

Its: _CEO / PRESIDENT_____

MODES VIS-A-VIS (1997) INC.

By: _____

Its: _VICE-PRESIDENT FINANCE_____

TOR 001494

21 Mar 07                11:23:48                     STOCK AVAILABILITY REPORT    SY6010        Page: 1
BABY PHAT (HP)
By Division/Season

| Season | Style No. | Description | Colour | Total | Total |
|---|---|---|---|---|---|
| CRUISE 2006 | | | | | |
| | J2A0015 | SIDE SHIRRED HALTER | 002NVY | 6 | 6 |
| | J2A0092 | SHIRRED V-NCK S/S T | 002BLK | 3 | 3 |
| | J2A0099 | C/F TRIM HALTER TOP | 034GRN | 2 | 2 |
| | J2A0107 | ROUCHED S/S TEE | 046TRQ | 6 | 6 |
| | J2A0134 | BAND CAP. SLV TUNIC | 002BLK 002NVY | 4 | 6 |
| | J2A0137 | L/S TUNIC W/BELT | 002BLK 003NVY | 3 | 7 |
| | J2P0003 | C/F ROMPER | 002BLK | 2 | 2 |
| | J2A0009 | WRAP LONG DRESS | 002BLK | 4 | 4 |
| | J2A0019 | O-RING HLTR TUB DRES | 002BLK 046DNM | 18 4 | 22 |

| Season | Style No. | Description | Colour | Total | Total |
|---|---|---|---|---|---|
| FALL 2006 | | | | | |
| | C1C001 | SD CARGO CAPRI JEAN | MOWASH | 9 | 9 |
| | C1C013 | RHINESTONE CUFF JEAN | TURNER | 10 | 10 |
| | C1S001 | SD MANDARN DENIM JKT | MOWASH | 5 | 5 |
| | C2A0015 | BOTWFRTFL HLFR TOP | 002BLK 131VAN | 4 | 5 |
| | C2A0023 | SD BASIC RAGLAN | 002BLK 046CHA | 5 | 5 |
| | C2A0026 | BUST HLFR W/TWIN | 002BLK 131VAN | 1 | 11 |
| | C2A0030 | BASIC CREW NECK TEE | 09CAR 131VAN | 2 | 3 |
| | C2A0032 | ONE SLV. SHIRRED TEE | 002BLK 131VAN | 2 | 5 |
| | C2A0034 | SD BASIC LOGO TEE | 131VAN | 0 | 8 |
| | C2A0035 | SHIRRED TUBE | 002BLK | 1 | 1 |

TOR 001495

# EXHIBIT TO DECEMBER 10, 2007 DECLARATION OF PHILIP R. HOFFMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

## PHAT FASHIONS LLC V. TORNADO IMPORTS (CANADA), INC.
### Case No.:  07 Civ. 3278 (PAC)

# EXHIBIT 30

# MONTREAL MEDIA ENTERTAINMENT BUILDING INC.

*5 Place Ville Marie*
*Suite 1537*
*Montreal (Quebec)*
*H3B 2G2*

*Telephone : (514) 866-8666 - Telecopier : (514) 866-2960*

November 5, 2004

3702669 CANADA INC.
C/O Mr. Issie Wiseman
5540 Ferrier Street
Montreal, Quebec H4P 1M2

Re:     Lease renewal
        482-488 St. Catherine Street

Dear Mr. Wiseman :

We propose to renew the term of your lease for an additional period of 5 years, commencing March 1st, 2005 subject to the following rental terms, conditions and modifications :

1.      The agreement of sublet dated February 8, 2000 entered into between Carleys Fashions Inc. as the Sub-Lessor and 3702669 Canada Inc. (Phat Pharm) as the Sub-Lessee shall convert into the principal lease (headlease) between the building owner, Montreal Media Entertainment Inc. ("Landlord") and Phat Pharm ("Tenant"), subject to the amendments and modifications herein below :

   a)   The annual rental payable for the premises shall be established as follows on a net net net care free, rental basis to the Landlord.

| Period | Total s/f | $ per s/f | Monthly rent | Annual rent |
|---|---|---|---|---|
| March 1, 2005-2006 | 3258 | $46 | $12,489.00 | $149,868.00 |
| 2006-2007 | 3258 | $48 | $13,032.00 | $156,384.00 |
| 2007-2008 | 3258 | $50 | $13,575.00 | $162,900.00 |
| 2008-2009 | 3258 | $53 | $14,389.00 | $172,674.00 |
| 2009-2010 | 3258 | $56 | $15,204.00 | $182,448.00 |

...2



PLAINTIFF'S EXHIBIT

*(i) which shall it include any business or non residential taxes which are normally payable by individual tenants (IN OTHER WORDS NO DUPLICATION of SUCH CHARGES)*

b) Effective as of the renewal term: commencing March 1. 2005. the Tenant shall be responsible for all business taxes, non residential taxes. water taxes against the premises, as well as for its proportional share of the building municipal real estate taxes, school taxes and comprehensive building and liability insurance;

c) The Tenant shall be responsible for its own utilities. as well as the maintenance, repairs and replacement of any HVAC systems located within the premises;

d) All goods and services taxes, harmonized taxes or value added taxes. whether national, provincial or local shall be an addition to the rental herein above stated :

e) There shall be no free abatements or credits for any rental. during the renewal term;

f) There shall be no renovations required of the Landlord to the premises;

g) There shall be no right to option to cancel the renewal term before its expiration date, provided hereinabove; *subject to sub paragraph (i) below*

h) All others terms of the Sub-Lessee not otherwise inconsistent with this document. shall remain in effect.

i) That after twenty four (24) months into this renewal term. the Tenant may elect to issue a letter. notifying the Landlord that it wishes to resiliate the lease at the expiration of any twelve months (12) period following the issuance of the Tenant notice.

In such event. the lease shall terminate without penalty and/or demand for any accelerated rental.

MONTREAL MEDIA ENTERTAINMENT BUILDING INC.

Per :  _____
       Glenn J. Feldman

We hereby accept to renew our lease on this _15_ day of November 2004.

3702669 CANADA INC.

Per :  _____
       Issie Wiseman

# EXHIBIT TO DECEMBER 10, 2007 DECLARATION OF PHILIP R. HOFFMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

## PHAT FASHIONS LLC V. TORNADO IMPORTS (CANADA), INC.
### Case No.:  07 Civ. 3278 (PAC)

# EXHIBIT 31

# 3702669 CANADA INC.

November 28, 2006

Mr. Glenn J. Feldman
Montreal Media Entertainment
Building Inc.
5 Place Ville Marie, Suite 1108
Montreal, Quebec  H3B 2G2

Re:     Lease renewal of November 15, 2004
           484 St. Catherine Street West, Montreal

Dear Mr. Feldman,

Further to our telephone conversation of earlier this week we would be
prepared to cancel our rights to resiliate the lease under section (i)
of the Lease Renewal signed on November 15, 2004 provided that the
landlord will agree to extend the renewal period by an additional three
(3) years ending February 28, 2013 under the same terms and conditions;
subject however to yearly annual rent increases of $1.00 per square
foot.  We have reviewed our long term financial plan for the Phat Farm
Store and are prepared to commit to a longer term provided you are in
agreement with the proposed annual escalations.

Yours, truly,
3702669 CANADA INC.

Barry Segal
V-P, Finance

*5540 FERRIER STREET, MONTREAL, QUEBEC H4P 1M2*
*Phone:  514-731-7070  Fax:  514-733-8533*


PLAINTIFF'S
EXHIBIT
31

# EXHIBIT TO DECEMBER 10, 2007 DECLARATION OF PHILIP R. HOFFMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

## PHAT FASHIONS LLC V. TORNADO IMPORTS (CANADA), INC.
### Case No.:  07 Civ. 3278 (PAC)

# EXHIBIT 32

# MONTREAL MEDIA ENTERTAINMENT BUILDING INC.

5 Place Ville Marie
Suite 1108
Montreal, Quebec
H3B 2G2

December 11, 2006

**3702669 CANADA INC.**
5540 Ferrier Street
Montreal, Quebec
H4P 1M2

Dear Gentlemen :

We acknowledge receipt of your letter dated November 28th of instant.

The landlord has agreed to enter into an extension agreement for the Lease Renewal and effectively acknowledges our mutual agreement to the effect that the resiliation rights provided for in the Lease Renewal will now be forever cancelled. You will find attached the Lease Amendment Agreement providing for the extension term. We would kindly ask you to review and sign same, returning two (2) originals to our office.

Cordially,

MONTREAL MEDIA ENTERTAINMENT
BUILDING INC.

Glenn J. Feldman

GJF:cr
Encl.



PLAINTIFF'S EXHIBIT

## LEASE AMENDMENT

Wherefore the parties entered into a Lease Renewal Agreement ("Renewal") on November 15, 2004 in connection with the leased premises situated at 484 St. Catherine Street West, Montreal, Quebec;

Wherefore the parties wish to amend the Renewal to provide for the following, to wit:

1.    Section (i) of the Renewal is hereby cancelled *à toutes fins que de droit* and the tenant hereby waives any rights or benefits therein;

2.    In consideration of the above, the landlord hereby agrees to extend the Renewal Period of the lease renewal according to the rent, terms and conditions provided for hereunder:

| Period | Total s/f | $ per s/f | Monthly rent | Annual rent |
|---|---|---|---|---|
| March 1, 2005-2006 | 3258 | $46.00 | $12,489.00 | $149,868.00 |
| 2006-2007 | 3258 | $48.00 | $13,032.00 | $156,384.00 |
| 2007-2008 | 3258 | $50.00 | $13,575.00 | $162,900.00 |
| 2008-2009 | 3258 | $53.00 | $14,389.00 | $172,674.00 |
| 2009-2010 | 3258 | $56.00 | $15,204.00 | $182,448.00 |
| 2010-2011 | 3258 | $57.00 | $15,475.50 | $185,706.00 |
| 2011-2012 | 3258 | $58.00 | $15,747.00 | $188,964.00 |
| 2012-2013 | 3258 | $59.00 | $16,018.50 | $192,222.00 |

3.    There shall be no further renewals or extensions provided for herein unless otherwise agreed to in writing between Landlord and Tenant;

4.    This document shall only be binding and enforceable upon the Landlord if countersigned and returned to the landlord before December 31, 2006, failing which this document shall be of no binding effect between the parties and the Renewal shall remain in full force and effect without amendment and/or extension whatsoever;

5.    This document shall constitute a binding and enforceable amendment to the Renewal, all other terms and conditions of the Renewal remaining the same.

Signed at Montreal, on this 11th day of December 2006

MONTREAL MEDIA ENTERTAINMENT BUILDING INC.

Per: _____
       Glenn J. Feldman

3702669 CANADA INC.

Per: _____
       Issie Wiseman

TOR 001662

# EXHIBIT TO DECEMBER 10, 2007 DECLARATION OF PHILIP R. HOFFMAN IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

## <u>PHAT FASHIONS LLC V. TORNADO IMPORTS (CANADA), INC.</u>
### Case No.:  07 Civ. 3278 (PAC)

# EXHIBIT 33

## Hoffman, Philip R.

**From:**    Bernt.Ullmann@kellwood.com
**Sent:**    Wednesday, October 25, 2006 7:16 AM
**To:**      Nathanson, Eli B.
**Cc:**      Rose, Brad D.; Luther.Rollins@kellwood.com; Peter.Morris@kellwood.com; Frazer, Richard
**Subject:** Re: Phat Farm Proposals

```
Eli,

I am awaiting further info re this retail deal.

Business terms have not been discussed yet.

Bernt
-------------------------
Sent from my BlackBerry Wireless Handheld
```

```
----- Original Message -----
From: "Nathanson, Eli B." [ENathanson@PRYORCASHMAN.com]
Sent: 10/24/2006 11:07 AM
To: Bernt Ullmann
Cc: Rose, Brad D." <BRose@PRYORCASHMAN.com>; Luther Rollins; Peter Morris;
Frazer, Richard" <RFrazer@PRYORCASHMAN.com>
Subject: RE: Phat Farm Proposals
```

Thank you Bernt.  We will proceed with the first draft on the Canada license. Please also see my note below regarding the domestic retail store proposal.  Were there any other terms discussed other than number of stores and term of deal?


Eli B. Nathanson
Pryor Cashman Sherman & Flynn LLP
410 Park Avenue, 10th Floor
New York, NY 10022
212-326-0894
212-798-6347 (facsimile)
enathanson@pryorcashman.com

```
-----Original Message-----
From: Bernt.Ullmann@kellwood.com [mailto:Bernt.Ullmann@kellwood.com]
Sent: Monday, October 23, 2006 9:12 PM
To: Nathanson, Eli B.
Cc: Rose, Brad D.; Luther Rollins; Peter Morris
Subject: Re: Phat Farm Proposals
```

```
Eli,

You are right about Tornado not having renewed. 1/1/08 is the first marketing
```

10/3/2007



**PF 0194**

# REDACTED

Thx,

Bernt

---------------------------
Sent from my BlackBerry Wireless Handheld

```
    ----- Original Message -----
    From: "Nathanson, Eli B." [ENathanson@PRYORCASHMAN.com]
    Sent: 10/23/2006 01:41 PM
    To: Bernt Ullmann
    Cc: Rose, Brad D." <BRose@PRYORCASHMAN.com>
    Subject: RE: Phat Farm Proposals
```

Bernt – I have reviewed the proposals and have the following questions on the PF Canada proposal:

Tornado –  I am showing that the term for the Tornado agreement ends 12/07, and that Tornado never signed the renewal amendment we had circulated at one point extending the term.  Is this your understanding?

If so, I'm assuming the term for this deal with the new group will begin as of 1/1/08.  Please confirm.

# REDACTED

10/3/2007

# REDACTED

Eli B. Nathanson
Pryor Cashman Sherman & Flynn LLP
410 Park Avenue, 10th Floor
New York, NY 10022
212-326-0894
212-798-6347 (facsimile)
enathanson@pryorcashman.com

> -----Original Message-----
> **From:** bernt.ullmann@kellwood.com [mailto:bernt.ullmann@kellwood.com]
> **Sent:** Monday, October 23, 2006 11:20 AM
> **To:** luther.rollins@kellwood.com; Rose, Brad D.
> **Cc:** Nathanson, Eli B.; Peter.Morris@kellwood.com
> **Subject:** Fw: Phat Farm Proposals
>
> Please note the proposals below.
> I have forwarded the Baby Phat proposal directly to BP.
>
> I would like to proceed with both the Phat Farm proposal for Canada as well as the proposed retail roll-out for the U.S.
>
> Thanks,
> Bernt
> ---- Forwarded by Bernt Ullmann/Kellwood on 10/23/2006 11:17 AM ----
> "marc kakon" <marc.kakon@algo.com>
>
> To    <bernt.ullmann@kellwood.com>
> cc
> Subject FW: Phat Farm Proposals
>
> 10/20/2006 04:48 PM

> -----Original Message-----
> **From:** marc kakon
> **Sent:** Friday, October 20, 2006 2:04 PM
> **To:** 'bernt.ullmann@kellwood.com'
> **Subject:** FW: Phat Farm Proposals

> -----Original Message-----

10/3/2007

Message

**From:** Gaby Bitton [mailto:gaby@buffalojeans.com]
**Sent:** Tuesday, October 17, 2006 12:38 PM
**To:** marc kakon
**Subject:** Fw: Phat Farm Proposals


-----Original Message-----
From: Rosa Costa <rcosta@multiprint.ca>
To: Dan <delituv@rogers.blackberry.net>; Gaby Bitton <gaby@buffalojeans.com>
Sent: Tue Oct 17 11:50:46 2006
Subject: Phat Farm Proposals

H <<Baby Phat agreement.doc>> i,


Please find enclos <<Phat Farm Men' s agreement.doc>> ed the revised proposals.  If you ha <<Phat Farm retail proposal for US.doc>> ve no other comments, I will send the proposals out by Wednesday via courier.


I look forward to your comments.


Thank you,

Rosa


This message contains information which may be confidential
and privileged. Unless you are the addressee (or authorized
to receive for the addressee), you may not use, copy or
disclose to anyone the message or any information contained
in the message. If you have received the message in error,
please advise the sender by reply email @pryorcashman.com,
and delete the message. Thank you very much.

To ensure compliance with U.S. Treasury Department regulations,
we advise that, unless otherwise expressly indicated, any
discussion of Federal tax issues in this communication was not
intended or written to be used, and cannot be used (i) to avoid
any penalties imposed under the Internal Revenue Code or
applicable provisions of state or local tax law or (ii) to
promote, market or recommend to another party any transaction
or matter addressed herein.


This message contains information which may be confidential
and privileged. Unless you are the addressee (or authorized
to receive for the addressee), you may not use, copy or

10/3/2007

disclose to anyone the message or any information contained
in the message. If you have received the message in error,
please advise the sender by reply email @pryorcashman.com,
and delete the message. Thank you very much.

To ensure compliance with U.S. Treasury Department regulations,
we advise that, unless otherwise expressly indicated, any
discussion of Federal tax issues in this communication was not
intended or written to be used, and cannot be used (i) to avoid
any penalties imposed under the Internal Revenue Code or
applicable provisions of state or local tax law or (ii) to
promote, market or recommend to another party any transaction
or matter addressed herein.

10/3/2007